

*Appendix M*

KANSAS DEPARTMENT OF CORRECTIONS
INTERDEPARTMENTAL MEMORANDUM

*A Safer Kansas Through Effective Correctional Services*

DATE: February 8, 2024

TO: Stauch, Letecia 129417

FROM: Chavez, Holly FSA

SUBJECT: Grievance: #24-097

I have received and reviewed your grievance. You stated that you had requested a copy of the compact contract with Colorado and that you had not received a copy. You state that you are filing in District Court for illegal detention in the state of Kansas.

After speaking with Darcie, the contact for Interstate Compact Cases, it was stated that the contracts are annual and self-renewing between states. It is a generic contract and not specific to each resident. A copy of the contract was sent to TCF and is attached to this document for you.

_____, FSA 2-8-24
Holly Chavez, Facility Services Administrator

CONTRACT BETWEEN THE STATE OF KANSAS AND
THE STATE OF COLORADO
FOR THE IMPLEMENTATION OF THE
INTERSTATE CORRECTIONS COMPACT

In consideration of the cooperative relationship herewith undertaken in the confinement, care, treatment, and rehabilitation of inmates on an interstate basis and in further consideration of services to be performed and benefits to be derived by each of the parties hereto in the strengthening of their respective correctional programs, the undersigned states of _____Kansas and Colorado_____ acting by their duly constituted authorities, and pursuant to and to implement the Interstate Corrections Compact enacted by each of the parties as follows:

    Kansas:    K.S.A. 76-3002 et seq.

    Colorado:

do hereby covenant and agree as follows:

1. Interstate Corrections Compact

The provisions of the Interstate Corrections Compact are hereby made an integral part of this contract and no provision of this contract shall be construed in any manner inconsistent with said Compact.

2. Governing Law

Except where expressly otherwise provided, the laws and administrative rules and regulations of the sending state shall govern in any matter relating to an inmate confined pursuant to this contract and the Interstate Corrections Compact.

3. Terminology

All terms defined in the Interstate Corrections Compact and used in this contract shall have the same meanings in this contract as in said Compact. The terms "sending state" and "receiving state" shall be construed to include and refer to the appropriate official or agency thereof in each particular case.

4. Duration

This contract shall enter into full force and effect on __June 1, 1976__ and shall terminate on __June 1, 1977__. It may be renewed by the party states under such terms and conditions and for such additional period as they may determine.

1

5. Termination

This agreement may be terminated by notice of either party. That termination shall become effective ninety (90) days after receipt of said notice. Within a reasonable time of receipt of said notice, the sending state shall accept delivery of its inmates at the institution designated by the receiving state.

6. Other Arrangements Unaffected

Nothing contained in this contract shall be construed to abrogate or impair any agreement or contract for the confinement, rehabilitation or treatment of inmates now in effect between the parties to this contract.

7. Mailing Addresses

All notices, reports and correspondence to the respective states to this contract shall be sent to the following:

| | |
|---|---|
| Colorado | Division of Corrections<br>4150 So. Lowell Boulevard<br>Denver, Colorado    80236 |
| Kansas: | Department of Corrections<br>State Office Building<br>Topeka, Kansas    66612 |

8. Right of Inspection

The sending state shall have the right to inspect, at all reasonable times, any institution of the receiving state in which inmates of the sending state are confined in order to determine if that institution maintains standards of care and discipline not incompatible with those of the sending state and that all inmates therein are treated equitably, regardless of race, religion, color, creed or national origin.

9. Vacancies

The receiving state hereby undertakes to make available to the sending state such places for inmates as may be vacant from time to time in any and all institutions of the receiving state made available for such confinement by the laws of the receiving state.

10. Application

The sending state will submit a separate application to the receiving state for each individual inmate proposed for commitment.

Said application shall consist of the following: Full information and all necessary documents relating to the case history, physical and

2

clinical record, judicial and administrative rulings and orders relating or pertinent to the inmate and the sentence or sentences pursuant to which confinement is to be had or to continue, and reasons for the requested transfer.

Commitment will be deferred until approved by the receiving state.

### 11. Delivery of Inmate

Upon receipt of the acceptance of the application the sending state at its expense will deliver the inmate to the institution in the receiving state designated by the receiving state, together with the original or a duly authenticated copy of his commitment, and any other official papers or documents authorizing detention. Whenever there is to be a mutual exchange of inmates between the parties to this contract, the authorities of one of the states may act as the agent of the other state for purposes of transferring its inmates so that the expenses to both states may be minimized.

### 12. Transfer of Funds

Funds due transferred inmates shall be provided by the sending state to be credited to the account of the transferred inmate in the receiving state. Upon the return of the inmate to the sending state the receiving state shall provide funds in the amount due the inmate at the time of return.

### 13. Responsibility for Offenders Custody

It shall be the responsibility of the administration of the institution in the receiving state to confine inmates from a sending state; to give them care and treatment including the furnishing of subsistence and all necessary medical and hospital services and supplies; to provide for their physical needs; to make available to them the programs of training and treatment which are consistent with their individual needs; to retain them in safe custody; to supervise them; to maintain proper discipline and control; to make certain that they receive no special privileges and that the sentences and orders of the committing court in the sending state are faithfully executed. But nothing herein contained shall be construed to require the receiving state or any of its institutions to provide treatment, facilities or programs for any inmate confined pursuant

3

to the Interstate Corrections Compact which it does not provide for similar inmates not confined pursuant to said Compact.

14. <u>Medical Services</u>

(a) Inmates from the sending state shall receive such medical, psychiatric and dental treatment as may be necessary to safeguard their health and promote their adjustment as self-supporting members of the community upon release. Unless an emergency is involved, the receiving state shall contact the sending state for advance authority in writing before incurring medical, psychiatric, or dental expense for which the sending state is responsible under the terms of this contract. In an emergency, the receiving state may proceed with the necessary treatment without prior authority, but in every such case the receiving state shall notify the sending state immediately and furnish full information regarding the nature of the illness, the type of treatment to be provided and the estimated cost thereof.

(b) When medical, psychiatric or dental care or treatment requires the removal of the inmate from the institution, the inmate shall be removed only after notification to the sending state. In the event of an emergency which does not permit prior notification, the institution shall notify the sending state as promptly thereafter as practicable. All necessary precautions shall be taken to assure the safe-keeping of the inmate while he is absent from the normal place of confinement. Necessary custodial supervision shall be provided by the receiving state.

(c) Any costs of medical, psychiatric or dental service shall be considered normal costs incidental to the operation of the institution in the receiving state if the service is rendered by staff personnel and in regularly maintained facilities operated or utilized by the institution as part of the health or correctional program thereof and if the inmate requires no special medication, drugs, equipment, anesthetics, surgery or nursing care in addition to that commonly available on an infirmary basis. The cost of any special services, medication, equipment, surgical, or nursing care shall be chargeable to the sending state.

15. <u>Training or Employment</u>

(a) Inmates from the sending state shall be afforded the opportunity and shall be required to participate in programs of occupational

4

training and industrial or other work on the same basis as inmates of the receiving state. Compensation in connection with any such participation (whether as payment, incentive, or for any other therapeutic or rehabilitative reason) shall be paid to inmates of the sending state on the same basis as to inmates of the receiving state. Any such inmates of the sending state shall be subject to the regular work discipline imposed upon other inmate participants in the particular program. However, nothing contained herein shall be construed to permit or require any inmate of a sending state to participate in any training, industrial or other work program contrary to the laws of the sending state.

(b) The receiving state shall have the right to dispose of all products produced by an inmate, shall retain all proceeds therefrom, and shall bear all costs of said program.

(c) In the case of Handicraft or Hobbycraft Programs, the inmate shall have the right to dispose of the products of his labor and to retain the proceeds of any sale of his work in accordance with the rules of the receiving state.

16. Discipline

The receiving state, as agent for the sending state, shall have physical control over and power to exercise disciplinary authority over all inmates from sending states. However, nothing contained herein shall be construed to authorize or permit the imposition of a type of discipline prohibited by the laws of the sending state.

17. Laws and Regulations

Inmates while in the custody of the receiving state shall be subject to all the provisions of law and regulations applicable to persons committed for violations of law of the receiving state not inconsistent with the sentence imposed.

18. Records and Reports from Receiving State

(a) Within ninety (90) days following the receipt of an inmate from the sending state, the receiving state shall furnish an admission classification report outlining the inmate's social background, medical, psychiatric, education and vocational findings and indicating the institutional program which has been recommended. Thereafter, preferably at

5

intervals of six months, but at least annually, the receiving state shall furnish the sending state a report giving a summary of the inmate's progress and adjustment since the last report, including a recommendation for retention or return. All such reports shall be forwarded to the sending state.

(b) The superintendent of other administrative head of an institution, in which inmates from sending states are confined, shall keep all necessary and pertinent records concerning such inmates in a manner agreed between the sending and receiving states. During the inmate's continuance in the institution, the sending state shall be entitled to receive, and upon request shall be furnished with copies of any such record or records. Upon termination of confinement in the institution, the sending state shall receive the complete file of the inmate. But nothing herein contained shall be construed to prevent the receiving state or any institution thereof from keeping copies of any such record or records upon and after termination of confinement.

19. Removal from Institution

An inmate from the sending state legally confined in the institutions of the receiving state shall not be removed therefrom by any person without an order from the sending state. This subdivision shall not apply to an emergency necessitating the immediate removal of the inmate for medical, dental or psychiatric treatment or to a removal made necessary by fire, flood, earthquake or other catastrophe or condition presenting imminent danger to the safety of the inmate. In the case of any removal for such emergency cause, the receiving state shall inform the sending state of the whereabouts of the inmate or inmates so removed at the earliest practicable time, and shall exercise all reasonable care for the safekeeping and custody of such inmate or inmates.

20. Hearings

The receiving state shall provide adequate facilities for any hearing by authorities of the sending state, to which an inmate may be entitled by the laws of the sending state. Upon the request of the sending state, the authorities of the receiving state will be authorized to and will conduct any such hearings, prepare and submit the record of said hearings, together with any recommendations of the hearing officials, to the officer or officers of the sending state before whom the hearing

would have been had if it had taken place in the sending state.

21. Inter-institutional Transfers

Notwithstanding any provision herein to the contrary, the receiving state may transfer an inmate from one institution under its control to another whenever it deems such action appropriate. Notice of such transfer shall immediately be sent to the sending state.

22. Escape

In case any such inmate shall escape from custody in the receiving state, that receiving state will use all reasonable means to recapture the inmate. The escape shall be reported immediately to the sending state. The receiving state shall have the primary responsibility for and authority to direct the pursuit and retaking of inmates within its own territory. Any costs in connection therewith shall be chargeable to and borne by the receiving state.

23. Death of Inmate

(a) In the event of the death of an inmate from a sending state, the medical examiner, coroner or other official having the duties of such an officer in the jurisdiction shall be notified. The sending state shall receive copies of any records made at or in connection with such notification.

(b) The institution in the receiving state shall immediately notify the sending state of the death of an inmate, furnish information as requested, and follow the instructions of the sending state with regard to the disposition of the body. The body shall not be released except on order of the appropriate officials of the sending state. All expenses relative to any necessary preparation of the body and shipment or express charges shall be paid by the sending state. The sending and receiving states may arrange to have the receiving state take care of the burial and all matters related or incidental thereto and all such expenses shall be paid by the sending state. The provisions of this paragraph shall govern only the relations between or among the party states and shall not affect the liability of any relative or other person for the disposition of the deceased or for any expenses connected therewith.

(c) The sending state shall receive a certified copy of the death certificate for any of its inmates who have died while in the receiving state.

24. <u>Gratuities and Expenses Attendant Upon Release</u>

The provision of clothing gratuities and any other supplies upon release of an inmate shall be at the expense of the sending state and shall be in accordance with its laws.

25. <u>Retaking of Inmates</u>

The receiving state will deliver any of said inmates to the proper officials of the sending state upon demand made to the receiving state and presentation of official written authority to receive said inmate.

The sending state will retake any inmate, upon the request of the receiving state, within thirty (30) days after receipt of the request to retake.

In case the commitment under which any of said inmates is terminated for any reason, the sending state agrees to accept delivery of the prisoner at the institution of the receiving state, and at its expense return him to the jurisdiction of the sending state.

26. <u>Photographing and Publicity</u>

Institutional or other officials of the receiving state shall not be authorized to release publicity concerning inmates from the sending state. They shall not release personal histories or photographs of such inmates or information concerning their arrival or departure or permit reporters or photographers to interview or photograph such inmates. Requests for information regarding inmates of sending states shall be referred to the sending state. However, information of public record, such as sentence data or information concerning the escape of an inmate may be given directly to the press by the receiving state. The receiving state may photograph inmates from the sending state as a means of identification for official use only.

27. <u>Cost and Reimbursement</u>

Reimbursement to the receiving state is to be the following, unless otherwise herein provided:

No reimbursement based on an equal exchange of inmates between the states.

28. <u>Transportation</u>

Any and all costs of transportation incurred prior to admission to an institution in the receiving state, and transportation at the time of, or as an incident to release or discharge, condition or otherwise shall be charged to the sending state.

8

29. Responsibility for Legal Proceedings

The sending state undertakes to defend any action or proceedings involving the custody of any of its inmates. The receiving state shall be reimbursed for any expense it may incur in connection therewith.

30. Internal Relations

Nothing in this contract shall be construed to affect the internal relationships between or among the party states and their subdivisions, officers, departments or agencies, but each party state undertakes and acknowledges liability and responsibility for making each other party state whole in respect of any obligation imposed upon it by or pursuant to this contract.

IN WITNESS WHEREOF, the undersigned duly authorized officers have subscribed their names on behalf of the State of __Kansas__ and the State of __Colorado__.

_[signature]_
R. R. RAINES
Secretary of Corrections
Department of Corrections
State of Kansas

_[signature]_
Dr. RAYMOND LEIDIG
Executive Director
Department of Institutions
State of Colorado

9