# PRISON RAPE ELIMINATION ACT

_Appendix Q_



# PRISONS AND JAIL STANDARDS

## United States Department of Justice Final Rule

National Standards to Prevent,
Detect, and Respond to Prison Rape
Under the Prison Rape Elimination Act (PREA)

28 C.F.R. Part 115
Docket No. OAG-131
RIN 1105-AB34
May 17, 2012

**PRISON RAPE ELIMINATION ACT NATIONAL STANDARDS – PRISONS & JAILS**

Sec.

115.5 General definitions.

115.6 Definitions related to sexual abuse.

**Standards for Adult Prisons and Jails**

**Prevention Planning**

115.11 Zero tolerance of sexual abuse and sexual harassment; PREA coordinator.

115.12 Contracting with other entities for the confinement of inmates.

115.13 Supervision and monitoring.

115.14 Youthful inmates.

115.15 Limits to cross-gender viewing and searches.

115.16 Inmates with disabilities and inmates who are limited English proficient.

115.17 Hiring and promotion decisions.

115.18 Upgrades to facilities and technologies.

**Responsive Planning**

115.21 Evidence protocol and forensic medical examinations.

115.22 Policies to ensure referrals of allegations for investigations.

**Training and Education**

115.31 Employee training.

115.32 Volunteer and contractor training.

115.33 Inmate education.

115.34 Specialized training: Investigations.

115.35 Specialized training: Medical and mental health care.

**Screening for Risk of Sexual Victimization and Abusiveness**

115.41 Screening for risk of victimization and abusiveness.

2

115.42 Use of screening information.

115.43 Protective custody.

**Reporting**

115.51 Inmate reporting.

115.52 Exhaustion of administrative remedies.

115.53 Inmate access to outside confidential support services.

115.54 Third-party reporting.

**Official Response Following an Inmate Report**

115.61 Staff and agency reporting duties.

115.62 Agency protection duties.

115.63 Reporting to other confinement facilities.

115.64 Staff first responder duties.

115.65 Coordinated response.

115.66 Preservation of ability to protect inmates from contact with abusers.

115.67 Agency protection against retaliation.

115.68 Post-allegation protective custody.

**Investigations**

115.71 Criminal and administrative agency investigations.

115.72 Evidentiary standard for administrative investigations.

115.73 Reporting to inmates.

**Discipline**

115.76 Disciplinary sanctions for staff.

115.77 Corrective action for contractors and volunteers.

115.78 Disciplinary sanctions for inmates.

**Medical and Mental Care**

115.81 Medical and mental health screenings; history of sexual abuse.

115.82 Access to emergency medical and mental health services.

115.83 Ongoing medical and mental health care for sexual abuse victims and abusers.

**Data Collection and Review**

115.86 Sexual abuse incident reviews.

115.87 Data collection.

115.88 Data review for corrective action.

115.89 Data storage, publication, and destruction.

**Audits**

115.93 Audits of standards.

**Auditing and Corrective Action**

115.401 Frequency and scope of audits.

115.402 Auditor qualifications.

115.403 Audit contents and findings.

115.404 Audit corrective action plan.

115.405 Audit appeals.

**State Compliance**

115.501 State determination and certification of full compliance.

**Standards for Prisons and Jails**

**§ 115.5 General definitions.**

For purposes of this part, the term—

*Agency* means the unit of a State, local, corporate, or nonprofit authority, or of the Department of Justice, with direct responsibility for the operation of any facility that confines inmates, detainees, or residents, including the implementation of policy as set by the governing, corporate, or nonprofit authority.

*Agency head* means the principal official of an agency.

Community confinement facility means a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community correctional facility (including residential re-entry centers), other than a juvenile facility, in which individuals reside as part of a term of imprisonment or as a condition of pre-trial release or post-release supervision, while participating in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during nonresidential hours.

*Contractor* means a person who provides services on a recurring basis pursuant to a contractual agreement with the agency.

*Detainee* means any person detained in a lockup, regardless of adjudication status.

*Direct staff supervision* means that security staff are in the same room with, and within reasonable hearing distance of, the resident or inmate.

*Employee* means a person who works directly for the agency or facility.

*Exigent circumstances* means any set of temporary and unforeseen circumstances that require immediate action in order to combat a threat to the security or institutional order of a facility.

*Facility* means a place, institution, building (or part thereof), set of buildings, structure, or area (whether or not enclosing a building or set of buildings) that is used by an agency for the confinement of individuals.

*Facility head* means the principal official of a facility.

*Full compliance* means compliance with all material requirements of each standard except for *de minimis* violations, or discrete and temporary violations during otherwise sustained periods of compliance.

*Gender nonconforming* means a person whose appearance or manner does not conform to traditional societal gender expectations.

5

*Inmate* means any person incarcerated or detained in a prison or jail.

Intersex means a person whose sexual or reproductive anatomy or chromosomal pattern does not seem to fit typical definitions of male or female. Intersex medical conditions are sometimes referred to as disorders of sex development.

*Jail* means a confinement facility of a Federal, State, or local law enforcement agency whose primary use is to hold persons pending adjudication of criminal charges, persons committed to confinement after adjudication of criminal charges for sentences of one year or less, or persons adjudicated guilty who are awaiting transfer to a correctional facility.

*Juvenile* means any person under the age of 18, unless under adult court supervision and confined or detained in a prison or jail.

*Juvenile facility* means a facility primarily used for the confinement of juveniles pursuant to the juvenile justice system or criminal justice system.

*Law enforcement staff* means employees responsible for the supervision and control of detainees in lockups.

*Lockup* means a facility that contains holding cells, cell blocks, or other secure enclosures that are:

(1) Under the control of a law enforcement, court, or custodial officer; and

(2) Primarily used for the temporary confinement of individuals who have recently been arrested, detained, or are being transferred to or from a court, jail, prison, or other agency.

*Medical practitioner* means a health professional who, by virtue of education, credentials, and experience, is permitted by law to evaluate and care for patients within the scope of his or her professional practice. A "qualified medical practitioner" refers to such a professional who has also successfully completed specialized training for treating sexual abuse victims.

*Mental health practitioner* means a mental health professional who, by virtue of education, credentials, and experience, is permitted by law to evaluate and care for patients within the scope of his or her professional practice. A "qualified mental health practitioner" refers to such a professional who has also successfully completed specialized training for treating sexual abuse victims.

*Pat-down search* means a running of the hands over the clothed body of an inmate, detainee, or resident by an employee to determine whether the individual possesses contraband.

*Prison* means an institution under Federal or State jurisdiction whose primary use is for the confinement of individuals convicted of a serious crime, usually in excess of one year in length, or a felony.

*Resident* means any person confined or detained in a juvenile facility or in a community confinement facility.

*Secure juvenile facility* means a juvenile facility in which the movements and activities of individual residents may be restricted or subject to control through the use of physical barriers or intensive staff supervision. A facility that allows residents access to the community to achieve treatment or correctional objectives, such as through educational or employment programs, typically will not be considered to be a secure juvenile facility.

*Security staff* means employees primarily responsible for the supervision and control of inmates, detainees, or residents in housing units, recreational areas, dining areas, and other program areas of the facility.

*Staff* means employees.

Strip search means a search that requires a person to remove or arrange some or all clothing so as to permit a visual inspection of the person's breasts, buttocks, or genitalia.

*Transgender* means a person whose gender identity (i.e., internal sense of feeling male or female) is different from the person's assigned sex at birth.

*Substantiated allegation* means an allegation that was investigated and determined to have occurred.

*Unfounded allegation* means an allegation that was investigated and determined not to have occurred.

*Unsubstantiated allegation* means an allegation that was investigated and the investigation produced insufficient evidence to make a final determination as to whether or not the event occurred.

*Volunteer* means an individual who donates time and effort on a recurring basis to enhance the activities and programs of the agency.

*Youthful inmate* means any person under the age of 18 who is under adult court supervision and incarcerated or detained in a prison or jail.

*Youthful detainee* means any person under the age of 18 who is under adult court supervision and detained in a lockup.

**§ 115.6 Definitions related to sexual abuse.**

For purposes of this part, the term—

*Sexual abuse* includes—

7

(1) Sexual abuse of an inmate, detainee, or resident by another inmate, detainee, or resident; and

(2) Sexual abuse of an inmate, detainee, or resident by a staff member, contractor, or volunteer.

Sexual abuse of an inmate, detainee, or resident by another inmate, detainee, or resident includes any of the following acts, if the victim does not consent, is coerced into such act by overt or implied threats of violence, or is unable to consent or refuse:

(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;

(2) Contact between the mouth and the penis, vulva, or anus;

(3) Penetration of the anal or genital opening of another person, however slight, by a hand, finger, object, or other instrument; and

(4) Any other intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or the buttocks of another person, excluding contact incidental to a physical altercation.

Sexual abuse of an inmate, detainee, or resident by a staff member, contractor, or volunteer includes any of the following acts, with or without consent of the inmate, detainee, or resident:

(1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;

(2) Contact between the mouth and the penis, vulva, or anus;

(3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(4) Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

(6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1)-(5) of this section;

(7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident, and

(8) Voyeurism by a staff member, contractor, or volunteer.

Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an inmate, detainee, or resident by staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all or part of an inmate's naked body or of an inmate performing bodily functions.

Sexual harassment includes—

(1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and

(2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

**Standards for Adult Prisons and Jails**

**Prevention Planning**

**§ 115.11 Zero tolerance of sexual abuse and sexual harassment; PREA coordinator.**

(a) An agency shall have a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the agency's approach to preventing, detecting, and responding to such conduct.

(b) An agency shall employ or designate an upper-level, agency-wide PREA coordinator with sufficient time and authority to develop, implement, and oversee agency efforts to comply with the PREA standards in all of its facilities.

(c) Where an agency operates more than one facility, each facility shall designate a PREA compliance manager with sufficient time and authority to coordinate the facility's efforts to comply with the PREA standards.

**§ 115.12 Contracting with other entities for the confinement of inmates.**

(a) A public agency that contracts for the confinement of its inmates with private agencies or other entities, including other government agencies, shall include in any new contract or contract renewal the entity's obligation to adopt and comply with the PREA standards.

(b) Any new contract or contract renewal shall provide for agency contract monitoring to ensure that the contractor is complying with the PREA standards.

**§ 115.13 Supervision and monitoring.**

(a) The agency shall ensure that each facility it operates shall develop, document, and make its best efforts to comply on a regular basis with a staffing plan that provides for adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse. In calculating adequate staffing levels and determining the need for video monitoring, facilities shall take into consideration:

(1) Generally accepted detention and correctional practices;

(2) Any judicial findings of inadequacy;

(3) Any findings of inadequacy from Federal investigative agencies;

(4) Any findings of inadequacy from internal or external oversight bodies;

(5) All components of the facility's physical plant (including "blind-spots" or areas where staff or inmates may be isolated);

(6) The composition of the inmate population;

(7) The number and placement of supervisory staff;

(8) Institution programs occurring on a particular shift;

(9) Any applicable State or local laws, regulations, or standards;

(10) The prevalence of substantiated and unsubstantiated incidents of sexual abuse; and

(11) Any other relevant factors.

(b) In circumstances where the staffing plan is not complied with, the facility shall document and justify all deviations from the plan.

(c) Whenever necessary, but no less frequently than once each year, for each facility the agency operates, in consultation with the PREA coordinator required by § 115.11, the agency shall assess, determine, and document whether adjustments are needed to:

(1) The staffing plan established pursuant to paragraph (a) of this section;

(2) The facility's deployment of video monitoring systems and other monitoring technologies; and

(3) The resources the facility has available to commit to ensure adherence to the staffing plan.

(d) Each agency operating a facility shall implement a policy and practice of having intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment. Such policy and practice shall be implemented for night shifts as well as day shifts. Each agency shall have a policy to prohibit staff from alerting other staff members that these supervisory rounds are occurring, unless such announcement is related to the legitimate operational functions of the facility.

## § 115.14 Youthful inmates.

(a) A youthful inmate shall not be placed in a housing unit in which the youthful inmate will have sight, sound, or physical contact with any adult inmate through use of a shared dayroom or other common space, shower area, or sleeping quarters.

(b) In areas outside of housing units, agencies shall either:

(1) maintain sight and sound separation between youthful inmates and adult inmates, or

(2) provide direct staff supervision when youthful inmates and adult inmates have sight, sound, or physical contact.

(c) Agencies shall make best efforts to avoid placing youthful inmates in isolation to comply with this provision. Absent exigent circumstances, agencies shall not deny youthful inmates daily large-muscle exercise and any legally required special education services to comply with this provision. Youthful inmates shall also have access to other programs and work opportunities to the extent possible.

### § 115.15 Limits to cross-gender viewing and searches.

(a) The facility shall not conduct cross-gender strip searches or cross-gender visual body cavity searches (meaning a search of the anal or genital opening) except in exigent circumstances or when performed by medical practitioners.

(b) As of August 20, 2015, or August 20, 2017 for a facility whose rated capacity does not exceed 50 inmates, the facility shall not permit cross-gender pat-down searches of female inmates, absent exigent circumstances. Facilities shall not restrict female inmates' access to regularly available programming or other out-of-cell opportunities in order to comply with this provision.

(c) The facility shall document all cross-gender strip searches and cross-gender visual body cavity searches, and shall document all cross-gender pat-down searches of female inmates.

(d) The facility shall implement policies and procedures that enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks. Such policies and procedures shall require staff of the opposite gender to announce their presence when entering an inmate housing unit.

(e) The facility shall not search or physically examine a transgender or intersex inmate for the sole purpose of determining the inmate's genital status. If the inmate's genital status is unknown, it may be determined during conversations with the inmate, by reviewing medical records, or, if necessary, by learning that information as part of a broader medical examination conducted in private by a medical practitioner.

(f) The agency shall train security staff in how to conduct cross-gender pat-down searches, and searches of transgender and intersex inmates, in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs.

### § 115.16 Inmates with disabilities and inmates who are limited English proficient.

(a) The agency shall take appropriate steps to ensure that inmates with disabilities (including, for example, inmates who are deaf or hard of hearing, those who are blind or have low vision, or those who have intellectual, psychiatric, or speech disabilities), have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment. Such steps shall include, when necessary to ensure effective

communication with inmates who are deaf or hard of hearing, providing access to interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. In addition, the agency shall ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities, including inmates who have intellectual disabilities, limited reading skills, or who are blind or have low vision. An agency is not required to take actions that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity, or in undue financial and administrative burdens, as those terms are used in regulations promulgated under title II of the Americans With Disabilities Act, 28 CFR 35.164.

(b) The agency shall take reasonable steps to ensure meaningful access to all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment to inmates who are limited English proficient, including steps to provide interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary.

(c) The agency shall not rely on inmate interpreters, inmate readers, or other types of inmate assistants except in limited circumstances where an extended delay in obtaining an effective interpreter could compromise the inmate's safety, the performance of first-response duties under § 115.64, or the investigation of the inmate's allegations.

### § 115.17 Hiring and promotion decisions.

(a) The agency shall not hire or promote anyone who may have contact with inmates, and shall not enlist the services of any contractor who may have contact with inmates, who—

(1) Has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997);

(2) Has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse; or

(3) Has been civilly or administratively adjudicated to have engaged in the activity described in paragraph (a)(2) of this section.

(b) The agency shall consider any incidents of sexual harassment in determining whether to hire or promote anyone, or to enlist the services of any contractor, who may have contact with inmates.

(c) Before hiring new employees who may have contact with inmates, the agency shall:

(1) Perform a criminal background records check; and

13

(2) Consistent with Federal, State, and local law, make its best efforts to contact all prior institutional employers for information on substantiated allegations of sexual abuse or any resignation during a pending investigation of an allegation of sexual abuse.

(d) The agency shall also perform a criminal background records check before enlisting the services of any contractor who may have contact with inmates.

(e) The agency shall either conduct criminal background records checks at least every five years of current employees and contractors who may have contact with inmates or have in place a system for otherwise capturing such information for current employees.

(f) The agency shall ask all applicants and employees who may have contact with inmates directly about previous misconduct described in paragraph (a) of this section in written applications or interviews for hiring or promotions and in any interviews or written self-evaluations conducted as part of reviews of current employees. The agency shall also impose upon employees a continuing affirmative duty to disclose any such misconduct.

(g) Material omissions regarding such misconduct, or the provision of materially false information, shall be grounds for termination.

(h) Unless prohibited by law, the agency shall provide information on substantiated allegations of sexual abuse or sexual harassment involving a former employee upon receiving a request from an institutional employer for whom such employee has applied to work.

### § 115.18 Upgrades to facilities and technologies.

(a) When designing or acquiring any new facility and in planning any substantial expansion or modification of existing facilities, the agency shall consider the effect of the design, acquisition, expansion, or modification upon the agency's ability to protect inmates from sexual abuse.

(b) When installing or updating a video monitoring system, electronic surveillance system, or other monitoring technology, the agency shall consider how such technology may enhance the agency's ability to protect inmates from sexual abuse.

**Responsive Planning**

### § 115.21 Evidence protocol and forensic medical examinations.

(a) To the extent the agency is responsible for investigating allegations of sexual abuse, the agency shall follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions.

(b) The protocol shall be developmentally appropriate for youth where applicable, and, as appropriate, shall be adapted from or otherwise based on the most recent edition of the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol

14

for Sexual Assault Medical Forensic Examinations, Adults/Adolescents," or similarly comprehensive and authoritative protocols developed after 2011.

(c) The agency shall offer all victims of sexual abuse access to forensic medical examinations, whether on-site or at an outside facility, without financial cost, where evidentiarily or medically appropriate. Such examinations shall be performed by Sexual Assault Forensic Examiners (SAFEs) or Sexual Assault Nurse Examiners (SANEs) where possible. If SAFEs or SANEs cannot be made available, the examination can be performed by other qualified medical practitioners. The agency shall document its efforts to provide SAFEs or SANEs.

(d) The agency shall attempt to make available to the victim a victim advocate from a rape crisis center. If a rape crisis center is not available to provide victim advocate services, the agency shall make available to provide these services a qualified staff member from a community-based organization, or a qualified agency staff member. Agencies shall document efforts to secure services from rape crisis centers. For the purpose of this standard, a rape crisis center refers to an entity that provides intervention and related assistance, such as the services specified in 42 U.S.C. 14043g(b)(2)(C), to victims of sexual assault of all ages. The agency may utilize a rape crisis center that is part of a governmental unit as long as the center is not part of the criminal justice system (such as a law enforcement agency) and offers a comparable level of confidentiality as a nongovernmental entity that provides similar victim services.

(e) As requested by the victim, the victim advocate, qualified agency staff member, or qualified community-based organization staff member shall accompany and support the victim through the forensic medical examination process and investigatory interviews and shall provide emotional support, crisis intervention, information, and referrals.

(f) To the extent the agency itself is not responsible for investigating allegations of sexual abuse, the agency shall request that the investigating agency follow the requirements of paragraphs (a) through (e) of this section.

(g) The requirements of paragraphs (a) through (f) of this section shall also apply to:

(1) Any State entity outside of the agency that is responsible for investigating allegations of sexual abuse in prisons or jails; and

(2) Any Department of Justice component that is responsible for investigating allegations of sexual abuse in prisons or jails.

(h) For the purposes of this section, a qualified agency staff member or a qualified community-based staff member shall be an individual who has been screened for appropriateness to serve in this role and has received education concerning sexual assault and forensic examination issues in general.

**§ 115.22 Policies to ensure referrals of allegations for investigations.**

(a) The agency shall ensure that an administrative or criminal investigation is completed for all allegations of sexual abuse and sexual harassment.

(b) The agency shall have in place a policy to ensure that allegations of sexual abuse or sexual harassment are referred for investigation to an agency with the legal authority to conduct criminal investigations, unless the allegation does not involve potentially criminal behavior. The agency shall publish such policy on its website or, if it does not have one, make the policy available through other means. The agency shall document all such referrals.

(c) If a separate entity is responsible for conducting criminal investigations, such publication shall describe the responsibilities of both the agency and the investigating entity.

(d) Any State entity responsible for conducting administrative or criminal investigations of sexual abuse or sexual harassment in prisons or jails shall have in place a policy governing the conduct of such investigations.

(e) Any Department of Justice component responsible for conducting administrative or criminal investigations of sexual abuse or sexual harassment in prisons or jails shall have in place a policy governing the conduct of such investigations.

## Training and Education

**§ 115.31 Employee training.**

(a) The agency shall train all employees who may have contact with inmates on:

(1) Its zero-tolerance policy for sexual abuse and sexual harassment;

(2) How to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures;

(3) Inmates' right to be free from sexual abuse and sexual harassment;

(4) The right of inmates and employees to be free from retaliation for reporting sexual abuse and sexual harassment;

(5) The dynamics of sexual abuse and sexual harassment in confinement;

(6) The common reactions of sexual abuse and sexual harassment victims;

(7) How to detect and respond to signs of threatened and actual sexual abuse;

(8) How to avoid inappropriate relationships with inmates;

16

(9) How to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates; and

(10) How to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities.

(b) Such training shall be tailored to the gender of the inmates at the employee's facility. The employee shall receive additional training if the employee is reassigned from a facility that houses only male inmates to a facility that houses only female inmates, or vice versa.

(c) All current employees who have not received such training shall be trained within one year of the effective date of the PREA standards, and the agency shall provide each employee with refresher training every two years to ensure that all employees know the agency's current sexual abuse and sexual harassment policies and procedures. In years in which an employee does not receive refresher training, the agency shall provide refresher information on current sexual abuse and sexual harassment policies.

(d) The agency shall document, through employee signature or electronic verification, that employees understand the training they have received.

## § 115.32 Volunteer and contractor training.

(a) The agency shall ensure that all volunteers and contractors who have contact with inmates have been trained on their responsibilities under the agency's sexual abuse and sexual harassment prevention, detection, and response policies and procedures.

(b) The level and type of training provided to volunteers and contractors shall be based on the services they provide and level of contact they have with inmates, but all volunteers and contractors who have contact with inmates shall be notified of the agency's zero-tolerance policy regarding sexual abuse and sexual harassment and informed how to report such incidents.

(c) The agency shall maintain documentation confirming that volunteers and contractors understand the training they have received.

## § 115.33 Inmate education.

(a) During the intake process, inmates shall receive information explaining the agency's zero-tolerance policy regarding sexual abuse and sexual harassment and how to report incidents or suspicions of sexual abuse or sexual harassment.

(b) Within 30 days of intake, the agency shall provide comprehensive education to inmates either in person or through video regarding their rights to be free from sexual abuse and sexual harassment and to be free from retaliation for reporting such incidents, and regarding agency policies and procedures for responding to such incidents.

(c) Current inmates who have not received such education shall be educated within one year of the effective date of the PREA standards, and shall receive education upon transfer to a different facility to the extent that the policies and procedures of the inmate's new facility differ from those of the previous facility.

(d) The agency shall provide inmate education in formats accessible to all inmates, including those who are limited English proficient, deaf, visually impaired, or otherwise disabled, as well as to inmates who have limited reading skills.

(e) The agency shall maintain documentation of inmate participation in these education sessions.

(f) In addition to providing such education, the agency shall ensure that key information is continuously and readily available or visible to inmates through posters, inmate handbooks, or other written formats.

## § 115.34 Specialized training: Investigations.

(a) In addition to the general training provided to all employees pursuant to § 115.31, the agency shall ensure that, to the extent the agency itself conducts sexual abuse investigations, its investigators have received training in conducting such investigations in confinement settings.

(b) Specialized training shall include techniques for interviewing sexual abuse victims, proper use of Miranda and Garrity warnings, sexual abuse evidence collection in confinement settings, and the criteria and evidence required to substantiate a case for administrative action or prosecution referral.

(c) The agency shall maintain documentation that agency investigators have completed the required specialized training in conducting sexual abuse investigations.

(d) Any State entity or Department of Justice component that investigates sexual abuse in confinement settings shall provide such training to its agents and investigators who conduct such investigations.

## § 115.35 Specialized training: Medical and mental health care.

(a) The agency shall ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in:

(1) How to detect and assess signs of sexual abuse and sexual harassment;

(2) How to preserve physical evidence of sexual abuse;

(3) How to respond effectively and professionally to victims of sexual abuse and sexual harassment; and

(4) How and to whom to report allegations or suspicions of sexual abuse and sexual harassment.

(b) If medical staff employed by the agency conduct forensic examinations, such medical staff shall receive the appropriate training to conduct such examinations.

(c) The agency shall maintain documentation that medical and mental health practitioners have received the training referenced in this standard either from the agency or elsewhere.

(d) Medical and mental health care practitioners shall also receive the training mandated for employees under § 115.31 or for contractors and volunteers under § 115.32, depending upon the practitioner's status at the agency.

**Screening for Risk of Sexual Victimization and Abusiveness**

**§ 115.41 Screening for risk of victimization and abusiveness.**

(a) All inmates shall be assessed during an intake screening and upon transfer to another facility for their risk of being sexually abused by other inmates or sexually abusive toward other inmates.

(b) Intake screening shall ordinarily take place within 72 hours of arrival at the facility.

(c) Such assessments shall be conducted using an objective screening instrument.

(d) The intake screening shall consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization:

(1) Whether the inmate has a mental, physical, or developmental disability;

(2) The age of the inmate;

(3) The physical build of the inmate;

(4) Whether the inmate has previously been incarcerated;

(5) Whether the inmate's criminal history is exclusively nonviolent;

(6) Whether the inmate has prior convictions for sex offenses against an adult or child;

(7) Whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming;

(8) Whether the inmate has previously experienced sexual victimization;

(9) The inmate's own perception of vulnerability; and

(10) Whether the inmate is detained solely for civil immigration purposes.

19

(e) The initial screening shall consider prior acts of sexual abuse, prior convictions for violent offenses, and history of prior institutional violence or sexual abuse, as known to the agency, in assessing inmates for risk of being sexually abusive.

(f) Within a set time period, not to exceed 30 days from the inmate's arrival at the facility, the facility will reassess the inmate's risk of victimization or abusiveness based upon any additional, relevant information received by the facility since the intake screening.

(g) An inmate's risk level shall be reassessed when warranted due to a referral, request, incident of sexual abuse, or receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness.

(h) Inmates may not be disciplined for refusing to answer, or for not disclosing complete information in response to, questions asked pursuant to paragraphs (d)(1), (d)(7), (d)(8), or (d)(9) of this section.

(i) The agency shall implement appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this standard in order to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates.

## § 115.42 Use of screening information.

(a) The agency shall use information from the risk screening required by § 115.41 to inform housing, bed, work, education, and program assignments with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive.

(b) The agency shall make individualized determinations about how to ensure the safety of each inmate.

(c) In deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, and in making other housing and programming assignments, the agency shall consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether the placement would present management or security problems.

(d) Placement and programming assignments for each transgender or intersex inmate shall be reassessed at least twice each year to review any threats to safety experienced by the inmate.

(e) A transgender or intersex inmate's own views with respect to his or her own safety shall be given serious consideration.

(f) Transgender and intersex inmates shall be given the opportunity to shower separately from other inmates.

(g) The agency shall not place lesbian, gay, bisexual, transgender, or intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status, unless such placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting such inmates.

**§ 115.43 Protective custody.**

(a) Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers. If a facility cannot conduct such an assessment immediately, the facility may hold the inmate in involuntary segregated housing for less than 24 hours while completing the assessment.

(b) Inmates placed in segregated housing for this purpose shall have access to programs, privileges, education, and work opportunities to the extent possible. If the facility restricts access to programs, privileges, education, or work opportunities, the facility shall document:

(1) The opportunities that have been limited;

(2) The duration of the limitation; and

(3) The reasons for such limitations.

(c) The facility shall assign such inmates to involuntary segregated housing only until an alternative means of separation from likely abusers can be arranged, and such an assignment shall not ordinarily exceed a period of 30 days.

(d) If an involuntary segregated housing assignment is made pursuant to paragraph (a) of this section, the facility shall clearly document:

(1) The basis for the facility's concern for the inmate's safety; and

(2) The reason why no alternative means of separation can be arranged.

(e) Every 30 days, the facility shall afford each such inmate a review to determine whether there is a continuing need for separation from the general population.

**Reporting**

**§ 115.51 Inmate reporting.**

(a) The agency shall provide multiple internal ways for inmates to privately report sexual abuse and sexual harassment, retaliation by other inmates or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents.

21

(b) The agency shall also provide at least one way for inmates to report abuse or harassment to a public or private entity or office that is not part of the agency, and that is able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials, allowing the inmate to remain anonymous upon request. Inmates detained solely for civil immigration purposes shall be provided information on how to contact relevant consular officials and relevant officials at the Department of Homeland Security.

(c) Staff shall accept reports made verbally, in writing, anonymously, and from third parties and shall promptly document any verbal reports.

(d) The agency shall provide a method for staff to privately report sexual abuse and sexual harassment of inmates.

### § 115.52 Exhaustion of administrative remedies.

(a) An agency shall be exempt from this standard if it does not have administrative procedures to address inmate grievances regarding sexual abuse.

(b)(1) The agency shall not impose a time limit on when an inmate may submit a grievance regarding an allegation of sexual abuse.

(2) The agency may apply otherwise-applicable time limits to any portion of a grievance that does not allege an incident of sexual abuse.

(3) The agency shall not require an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse.

(4) Nothing in this section shall restrict the agency's ability to defend against an inmate lawsuit on the ground that the applicable statute of limitations has expired.

(c) The agency shall ensure that—

(1) An inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint, and

(2) Such grievance is not referred to a staff member who is the subject of the complaint.

(d)(1) The agency shall issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance.

(2) Computation of the 90-day time period shall not include time consumed by inmates in preparing any administrative appeal.

(3) The agency may claim an extension of time to respond, of up to 70 days, if the normal time period for response is insufficient to make an appropriate decision. The agency shall notify the inmate in writing of any such extension and provide a date by which a decision will be made.

(4) At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly noticed extension, the inmate may consider the absence of a response to be a denial at that level.

(e)(1) Third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, shall be permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse, and shall also be permitted to file such requests on behalf of inmates.

(2) If a third party files such a request on behalf of an inmate, the facility may require as a condition of processing the request that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.

(3) If the inmate declines to have the request processed on his or her behalf, the agency shall document the inmate's decision.

(f)(1) The agency shall establish procedures for the filing of an emergency grievance alleging that an inmate is subject to a substantial risk of imminent sexual abuse.

(2) After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, the agency shall immediately forward the grievance (or any portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken, shall provide an initial response within 48 hours, and shall issue a final agency decision within 5 calendar days. The initial response and final agency decision shall document the agency's determination whether the inmate is in substantial risk of imminent sexual abuse and the action taken in response to the emergency grievance.

(g) The agency may discipline an inmate for filing a grievance related to alleged sexual abuse only where the agency demonstrates that the inmate filed the grievance in bad faith.

**§ 115.53 Inmate access to outside confidential support services.**

(a) The facility shall provide inmates with access to outside victim advocates for emotional support services related to sexual abuse by giving inmates mailing addresses and telephone numbers, including toll-free hotline numbers where available, of local, State, or national victim advocacy or rape crisis organizations, and, for persons detained solely for civil immigration purposes, immigrant services agencies. The facility shall enable reasonable communication between inmates and these organizations and agencies, in as confidential a manner as possible.

(b) The facility shall inform inmates, prior to giving them access, of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws.

(c) The agency shall maintain or attempt to enter into memoranda of understanding or other agreements with community service providers that are able to provide inmates with confidential emotional support services related to sexual abuse. The agency shall maintain copies of agreements or documentation showing attempts to enter into such agreements.

**§ 115.54 Third-party reporting.**

The agency shall establish a method to receive third-party reports of sexual abuse and sexual harassment and shall distribute publicly information on how to report sexual abuse and sexual harassment on behalf of an inmate.

**Official Response Following an Inmate Report**

**§ 115.61 Staff and agency reporting duties.**

(a) The agency shall require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation.

(b) Apart from reporting to designated supervisors or officials, staff shall not reveal any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions.

(c) Unless otherwise precluded by Federal, State, or local law, medical and mental health practitioners shall be required to report sexual abuse pursuant to paragraph (a) of this section and to inform inmates of the practitioner's duty to report, and the limitations of confidentiality, at the initiation of services.

(d) If the alleged victim is under the age of 18 or considered a vulnerable adult under a State or local vulnerable persons statute, the agency shall report the allegation to the designated State or local services agency under applicable mandatory reporting laws.

(e) The facility shall report all allegations of sexual abuse and sexual harassment, including third-party and anonymous reports, to the facility's designated investigators.

**§ 115.62 Agency protection duties.**

When an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate action to protect the inmate.

**§ 115.63 Reporting to other confinement facilities.**

(a) Upon receiving an allegation that an inmate was sexually abused while confined at another facility, the head of the facility that received the allegation shall notify the head of the facility or appropriate office of the agency where the alleged abuse occurred.

(b) Such notification shall be provided as soon as possible, but no later than 72 hours after receiving the allegation.

(c) The agency shall document that it has provided such notification.

(d) The facility head or agency office that receives such notification shall ensure that the allegation is investigated in accordance with these standards.

**§ 115.64 Staff first responder duties.**

(a) Upon learning of an allegation that an inmate was sexually abused, the first security staff member to respond to the report shall be required to:

(1) Separate the alleged victim and abuser;

(2) Preserve and protect any crime scene until appropriate steps can be taken to collect any evidence;

(3) If the abuse occurred within a time period that still allows for the collection of physical evidence, request that the alleged victim not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating; and

(4) If the abuse occurred within a time period that still allows for the collection of physical evidence, ensure that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating.

(b) If the first staff responder is not a security staff member, the responder shall be required to request that the alleged victim not take any actions that could destroy physical evidence, and then notify security staff.

**§ 115.65 Coordinated response.**

The facility shall develop a written institutional plan to coordinate actions taken in response to an incident of sexual abuse, among staff first responders, medical and mental health practitioners, investigators, and facility leadership.

**§ 115.66 Preservation of ability to protect inmates from contact with abusers.**

(a) Neither the agency nor any other governmental entity responsible for collective bargaining on the agency's behalf shall enter into or renew any collective bargaining agreement or other agreement that limits the agency's ability to remove alleged staff sexual abusers from contact with any inmates pending the outcome of an investigation or of a determination of whether and to what extent discipline is warranted.

(b) Nothing in this standard shall restrict the entering into or renewal of agreements that govern:

(1) The conduct of the disciplinary process, as long as such agreements are not inconsistent with the provisions of §§ 115.72 and 115.76; or

(2) Whether a no-contact assignment that is imposed pending the outcome of an investigation shall be expunged from or retained in the staff member's personnel file following a determination that the allegation of sexual abuse is not substantiated.

### § 115.67 Agency protection against retaliation.

(a) The agency shall establish a policy to protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff, and shall designate which staff members or departments are charged with monitoring retaliation.

(b) The agency shall employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations.

(c) For at least 90 days following a report of sexual abuse, the agency shall monitor the conduct and treatment of inmates or staff who reported the sexual abuse and of inmates who were reported to have suffered sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff, and shall act promptly to remedy any such retaliation. Items the agency should monitor include any inmate disciplinary reports, housing, or program changes, or negative performance reviews or reassignments of staff. The agency shall continue such monitoring beyond 90 days if the initial monitoring indicates a continuing need.

(d) In the case of inmates, such monitoring shall also include periodic status checks.

(e) If any other individual who cooperates with an investigation expresses a fear of retaliation, the agency shall take appropriate measures to protect that individual against retaliation.

(f) An agency's obligation to monitor shall terminate if the agency determines that the allegation is unfounded.

**§ 115.68 Post-allegation protective custody.**

Any use of segregated housing to protect an inmate who is alleged to have suffered sexual abuse shall be subject to the requirements of § 115.43.

**Investigations**

**§ 115.71 Criminal and administrative agency investigations.**

(a) When the agency conducts its own investigations into allegations of sexual abuse and sexual harassment, it shall do so promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports.

(b) Where sexual abuse is alleged, the agency shall use investigators who have received special training in sexual abuse investigations pursuant to § 115.34.

(c) Investigators shall gather and preserve direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data; shall interview alleged victims, suspected perpetrators, and witnesses; and shall review prior complaints and reports of sexual abuse involving the suspected perpetrator.

(d) When the quality of evidence appears to support criminal prosecution, the agency shall conduct compelled interviews only after consulting with prosecutors as to whether compelled interviews may be an obstacle for subsequent criminal prosecution.

(e) The credibility of an alleged victim, suspect, or witness shall be assessed on an individual basis and shall not be determined by the person's status as inmate or staff. No agency shall require an inmate who alleges sexual abuse to submit to a polygraph examination or other truth-telling device as a condition for proceeding with the investigation of such an allegation.

(f) Administrative investigations:

(1) Shall include an effort to determine whether staff actions or failures to act contributed to the abuse; and

(2) Shall be documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings.

(g) Criminal investigations shall be documented in a written report that contains a thorough description of physical, testimonial, and documentary evidence and attaches copies of all documentary evidence where feasible.

(h) Substantiated allegations of conduct that appears to be criminal shall be referred for prosecution.

(i) The agency shall retain all written reports referenced in paragraphs (f) and (g) of this section for as long as the alleged abuser is incarcerated or employed by the agency, plus five years.

(j) The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation.

(k) Any State entity or Department of Justice component that conducts such investigations shall do so pursuant to the above requirements.

(l) When outside agencies investigate sexual abuse, the facility shall cooperate with outside investigators and shall endeavor to remain informed about the progress of the investigation.

### § 115.72 Evidentiary standard for administrative investigations.

The agency shall impose no standard higher than a preponderance of the evidence in determining whether allegations of sexual abuse or sexual harassment are substantiated.

### § 115.73 Reporting to inmates.

(a) Following an investigation into an inmate's allegation that he or she suffered sexual abuse in an agency facility, the agency shall inform the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded.

(b) If the agency did not conduct the investigation, it shall request the relevant information from the investigative agency in order to inform the inmate.

(c) Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, the agency shall subsequently inform the inmate (unless the agency has determined that the allegation is unfounded) whenever:

(1) The staff member is no longer posted within the inmate's unit;

(2) The staff member is no longer employed at the facility;

(3) The agency learns that the staff member has been indicted on a charge related to sexual abuse within the facility; or

(4) The agency learns that the staff member has been convicted on a charge related to sexual abuse within the facility.

(d) Following an inmate's allegation that he or she has been sexually abused by another inmate, the agency shall subsequently inform the alleged victim whenever:

(1) The agency learns that the alleged abuser has been indicted on a charge related to sexual abuse within the facility; or

(2) The agency learns that the alleged abuser has been convicted on a charge related to sexual abuse within the facility.

(e) All such notifications or attempted notifications shall be documented.

(f) An agency's obligation to report under this standard shall terminate if the inmate is released from the agency's custody.

**Discipline**

### § 115.76 Disciplinary sanctions for staff.

(a) Staff shall be subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies.

(b) Termination shall be the presumptive disciplinary sanction for staff who have engaged in sexual abuse.

(c) Disciplinary sanctions for violations of agency policies relating to sexual abuse or sexual harassment (other than actually engaging in sexual abuse) shall be commensurate with the nature and circumstances of the acts committed, the staff member's disciplinary history, and the sanctions imposed for comparable offenses by other staff with similar histories.

(d) All terminations for violations of agency sexual abuse or sexual harassment policies, or resignations by staff who would have been terminated if not for their resignation, shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to any relevant licensing bodies.

### § 115.77 Corrective action for contractors and volunteers.

(a) Any contractor or volunteer who engages in sexual abuse shall be prohibited from contact with inmates and shall be reported to law enforcement agencies, unless the activity was clearly not criminal, and to relevant licensing bodies.

(b) The facility shall take appropriate remedial measures, and shall consider whether to prohibit further contact with inmates, in the case of any other violation of agency sexual abuse or sexual harassment policies by a contractor or volunteer.

### § 115.78 Disciplinary sanctions for inmates.

(a) Inmates shall be subject to disciplinary sanctions pursuant to a formal disciplinary process following an administrative finding that the inmate engaged in inmate-on-inmate sexual abuse or following a criminal finding of guilt for inmate-on-inmate sexual abuse.

(b) Sanctions shall be commensurate with the nature and circumstances of the abuse committed, the inmate's disciplinary history, and the sanctions imposed for comparable offenses by other inmates with similar histories.

(c) The disciplinary process shall consider whether an inmate's mental disabilities or mental illness contributed to his or her behavior when determining what type of sanction, if any, should be imposed.

(d) If the facility offers therapy, counseling, or other interventions designed to address and correct underlying reasons or motivations for the abuse, the facility shall consider whether to require the offending inmate to participate in such interventions as a condition of access to programming or other benefits.

(e) The agency may discipline an inmate for sexual contact with staff only upon a finding that the staff member did not consent to such contact.

(f) For the purpose of disciplinary action, a report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred shall not constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation.

(g) An agency may, in its discretion, prohibit all sexual activity between inmates and may discipline inmates for such activity. An agency may not, however, deem such activity to constitute sexual abuse if it determines that the activity is not coerced.

**Medical and Mental Care**

### § 115.81 Medical and mental health screenings; history of sexual abuse.

(a) If the screening pursuant to § 115.41 indicates that a prison inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, staff shall ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening.

(b) If the screening pursuant to § 115.41 indicates that a prison inmate has previously perpetrated sexual abuse, whether it occurred in an institutional setting or in the community, staff shall ensure that the inmate is offered a follow-up meeting with a mental health practitioner within 14 days of the intake screening.

(c) If the screening pursuant to § 115.41 indicates that a jail inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, staff shall ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening.

(d) Any information related to sexual victimization or abusiveness that occurred in an institutional setting shall be strictly limited to medical and mental health practitioners and other staff, as necessary, to inform treatment plans and security and management decisions, including housing, bed, work, education, and program assignments, or as otherwise required by Federal, State, or local law.

(e) Medical and mental health practitioners shall obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18.

## § 115.82 Access to emergency medical and mental health services.

(a) Inmate victims of sexual abuse shall receive timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment.

(b) If no qualified medical or mental health practitioners are on duty at the time a report of recent abuse is made, security staff first responders shall take preliminary steps to protect the victim pursuant to § 115.62 and shall immediately notify the appropriate medical and mental health practitioners.

(c) Inmate victims of sexual abuse while incarcerated shall be offered timely information about and timely access to emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care, where medically appropriate.

(d) Treatment services shall be provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident.

## § 115.83 Ongoing medical and mental health care for sexual abuse victims and abusers.

(a) The facility shall offer medical and mental health evaluation and, as appropriate, treatment to all inmates who have been victimized by sexual abuse in any prison, jail, lockup, or juvenile facility.

(b) The evaluation and treatment of such victims shall include, as appropriate, follow-up services, treatment plans, and, when necessary, referrals for continued care following their transfer to, or placement in, other facilities, or their release from custody.

(c) The facility shall provide such victims with medical and mental health services consistent with the community level of care.

(d) Inmate victims of sexually abusive vaginal penetration while incarcerated shall be offered pregnancy tests.

31

(e) If pregnancy results from the conduct described in paragraph (d) of this section, such victims shall receive timely and comprehensive information about and timely access to all lawful pregnancy-related medical services.

(f) Inmate victims of sexual abuse while incarcerated shall be offered tests for sexually transmitted infections as medically appropriate.

(g) Treatment services shall be provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident.

(h) All prisons shall attempt to conduct a mental health evaluation of all known inmate-on-inmate abusers within 60 days of learning of such abuse history and offer treatment when deemed appropriate by mental health practitioners.

**Data Collection and Review**

**§ 115.86 Sexual abuse incident reviews.**

(a) The facility shall conduct a sexual abuse incident review at the conclusion of every sexual abuse investigation, including where the allegation has not been substantiated, unless the allegation has been determined to be unfounded.

(b) Such review shall ordinarily occur within 30 days of the conclusion of the investigation.

(c) The review team shall include upper-level management officials, with input from line supervisors, investigators, and medical or mental health practitioners.

(d) The review team shall:

(1) Consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse;

(2) Consider whether the incident or allegation was motivated by race; ethnicity; gender identity; lesbian, gay, bisexual, transgender, or intersex identification, status, or perceived status; or gang affiliation; or was motivated or otherwise caused by other group dynamics at the facility;

(3) Examine the area in the facility where the incident allegedly occurred to assess whether physical barriers in the area may enable abuse;

(4) Assess the adequacy of staffing levels in that area during different shifts;

(5) Assess whether monitoring technology should be deployed or augmented to supplement supervision by staff; and

(6) Prepare a report of its findings, including but not necessarily limited to determinations made pursuant to paragraphs (d)(1)-(d)(5) of this section, and any recommendations for improvement and submit such report to the facility head and PREA compliance manager.

(e) The facility shall implement the recommendations for improvement, or shall document its reasons for not doing so.

### § 115.87 Data collection.

(a) The agency shall collect accurate, uniform data for every allegation of sexual abuse at facilities under its direct control using a standardized instrument and set of definitions.

(b) The agency shall aggregate the incident-based sexual abuse data at least annually.

(c) The incident-based data collected shall include, at a minimum, the data necessary to answer all questions from the most recent version of the Survey of Sexual Violence conducted by the Department of Justice.

(d) The agency shall maintain, review, and collect data as needed from all available incident-based documents, including reports, investigation files, and sexual abuse incident reviews.

(e) The agency also shall obtain incident-based and aggregated data from every private facility with which it contracts for the confinement of its inmates.

(f) Upon request, the agency shall provide all such data from the previous calendar year to the Department of Justice no later than June 30.

### § 115.88 Data review for corrective action.

(a) The agency shall review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by:

(1) Identifying problem areas;

(2) Taking corrective action on an ongoing basis; and

(3) Preparing an annual report of its findings and corrective actions for each facility, as well as the agency as a whole.

(b) Such report shall include a comparison of the current year's data and corrective actions with those from prior years and shall provide an assessment of the agency's progress in addressing sexual abuse.

(c) The agency's report shall be approved by the agency head and made readily available to the public through its website or, if it does not have one, through other means.

(d) The agency may redact specific material from the reports when publication would present a clear and specific threat to the safety and security of a facility, but must indicate the nature of the material redacted.

## § 115.89 Data storage, publication, and destruction.

(a) The agency shall ensure that data collected pursuant to § 115.87 are securely retained.

(b) The agency shall make all aggregated sexual abuse data, from facilities under its direct control and private facilities with which it contracts, readily available to the public at least annually through its website or, if it does not have one, through other means.

(c) Before making aggregated sexual abuse data publicly available, the agency shall remove all personal identifiers.

(d) The agency shall maintain sexual abuse data collected pursuant to § 115.87 for at least 10 years after the date of the initial collection unless Federal, State, or local law requires otherwise.

## Audits

## § 115.93 Audits of standards.

The agency shall conduct audits pursuant to §§ 115.401–.405.

## Auditing and Corrective Action

## § 115.401 Frequency and scope of audits.

(a) During the three-year period starting on August 20, 2013, and during each three-year period thereafter, the agency shall ensure that each facility operated by the agency, or by a private organization on behalf of the agency, is audited at least once.

(b) During each one-year period starting on August 20, 2013, the agency shall ensure that at least one-third of each facility type operated by the agency, or by a private organization on behalf of the agency, is audited.

(c) The Department of Justice may send a recommendation to an agency for an expedited audit if the Department has reason to believe that a particular facility may be experiencing problems relating to sexual abuse. The recommendation may also include referrals to resources that may assist the agency with PREA-related issues.

(d) The Department of Justice shall develop and issue an audit instrument that will provide guidance on the conduct of and contents of the audit.

(e) The agency shall bear the burden of demonstrating compliance with the standards.

(f) The auditor shall review all relevant agency-wide policies, procedures, reports, internal and external audits, and accreditations for each facility type.

(g) The audits shall review, at a minimum, a sampling of relevant documents and other records and information for the most recent one-year period.

(h) The auditor shall have access to, and shall observe, all areas of the audited facilities.

(i) The auditor shall be permitted to request and receive copies of any relevant documents (including electronically stored information).

(j) The auditor shall retain and preserve all documentation (including, e.g., video tapes and interview notes) relied upon in making audit determinations. Such documentation shall be provided to the Department of Justice upon request.

(k) The auditor shall interview a representative sample of inmates, residents, and detainees, and of staff, supervisors, and administrators.

(l) The auditor shall review a sampling of any available videotapes and other electronically available data (e.g., Watchtour) that may be relevant to the provisions being audited.

(m) The auditor shall be permitted to conduct private interviews with inmates, residents, and detainees.

(n) Inmates, residents, and detainees shall be permitted to send confidential information or correspondence to the auditor in the same manner as if they were communicating with legal counsel.

(o) Auditors shall attempt to communicate with community-based or victim advocates who may have insight into relevant conditions in the facility.

## § 115.402 Auditor qualifications.

(a) An audit shall be conducted by:

(1) A member of a correctional monitoring body that is not part of, or under the authority of, the agency (but may be part of, or authorized by, the relevant State or local government);

(2) A member of an auditing entity such as an inspector general's or ombudsperson's office that is external to the agency; or

(3) Other outside individuals with relevant experience.

(b) All auditors shall be certified by the Department of Justice. The Department of Justice shall develop and issue procedures regarding the certification process, which shall include training requirements.

35

(c) No audit may be conducted by an auditor who has received financial compensation from the agency being audited (except for compensation received for conducting prior PREA audits) within the three years prior to the agency's retention of the auditor.

(d) The agency shall not employ, contract with, or otherwise financially compensate the auditor for three years subsequent to the agency's retention of the auditor, with the exception of contracting for subsequent PREA audits.

## § 115.403 Audit contents and findings.

(a) Each audit shall include a certification by the auditor that no conflict of interest exists with respect to his or her ability to conduct an audit of the agency under review.

(b) Audit reports shall state whether agency-wide policies and procedures comply with relevant PREA standards.

(c) For each PREA standard, the auditor shall determine whether the audited facility reaches one of the following findings: Exceeds Standard (substantially exceeds requirement of standard); Meets Standard (substantial compliance; complies in all material ways with the standard for the relevant review period); Does Not Meet Standard (requires corrective action). The audit summary shall indicate, among other things, the number of provisions the facility has achieved at each grade level.

(d) Audit reports shall describe the methodology, sampling sizes, and basis for the auditor's conclusions with regard to each standard provision for each audited facility, and shall include recommendations for any required corrective action.

(e) Auditors shall redact any personally identifiable inmate or staff information from their reports, but shall provide such information to the agency upon request, and may provide such information to the Department of Justice.

(f) The agency shall ensure that the auditor's final report is published on the agency's website if it has one, or is otherwise made readily available to the public.

## § 115.404 Audit corrective action plan.

(a) A finding of "Does Not Meet Standard" with one or more standards shall trigger a 180-day corrective action period.

(b) The auditor and the agency shall jointly develop a corrective action plan to achieve compliance.

(c) The auditor shall take necessary and appropriate steps to verify implementation of the corrective action plan, such as reviewing updated policies and procedures or re-inspecting portions of a facility.

(d) After the 180-day corrective action period ends, the auditor shall issue a final determination as to whether the facility has achieved compliance with those standards requiring corrective action.

(e) If the agency does not achieve compliance with each standard, it may (at its discretion and cost) request a subsequent audit once it believes that is has achieved compliance.

## § 115.405 Audit appeals.

(a) An agency may lodge an appeal with the Department of Justice regarding any specific audit finding that it believes to be incorrect. Such appeal must be lodged within 90 days of the auditor's final determination.

(b) If the Department determines that the agency has stated good cause for a re-evaluation, the agency may commission a re-audit by an auditor mutually agreed upon by the Department and the agency. The agency shall bear the costs of this re-audit.

(c) The findings of the re-audit shall be considered final.

## State Compliance

## § 115.501 State determination and certification of full compliance.

(a) In determining pursuant to 42 U.S.C. 15607(c)(2) whether the State is in full compliance with the PREA standards, the Governor shall consider the results of the most recent agency audits.

(b) The Governor's certification shall apply to all facilities in the State under the operational control of the State's executive branch, including facilities operated by private entities on behalf of the State's executive branch.