**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**LETECIA STAUCH,**

      **Plaintiff,**

      v.                                   **CASE NO.  24-3027-JWL**

**JEFF ZMUDA, et al.,**

      **Defendants.**

<u>**MEMORANDUM AND ORDER TO SHOW CAUSE**</u>

Plaintiff Letecia Stauch is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

**I.  Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is in custody at the Topeka Correctional Facility in Topeka, Kansas ("TCF").  Plaintiff is a Colorado Department of Corrections' ("CDOC") prisoner housed at TCF through the Interstate Corrections Compact.  The Court granted Plaintiff leave to proceed in forma pauperis.

Although Plaintiff's Complaint is on a court-approved form, she submitted additional pages and exhibits consisting of over 200 pages.[1]  Plaintiff mentions various claims throughout her Complaint, including: that she is being illegally detained in Kansas pursuant to the Interstate

---

[1] Plaintiff's original complaint and attachments (Doc. 1) consist of 104 pages.  Plaintiff then filed another copy of the complaint (Doc. 4) with 12 additional pages that were omitted from the original complaint.  Plaintiff also filed three additional documents purporting to be additional exhibits for the complaint—one consisting of an additional 35 pages of exhibits (Doc. 5); one consisting of an additional 38 pages of exhibits (Doc. 8); and one consisting of an additional 15 pages of exhibits (Doc. 10).

Corrections Compact[2]; her First Amendment right to access the Colorado and Kansas courts is being denied; her First Amendment free speech rights are being denied because she is not allowed to talk to a lawyer; her First Amendment free exercise rights are being denied;  she is being sexually harassed and denied medical care in violation of the Eighth Amendment; she is being subjected to retaliation; the facility has sewage leaks, mold, leaking windows, cold and non-nutritious food, and inadequate plumbing and ventilation; and staff fail to respond to grievances.

Plaintiff names as defendants:   Jeff Zmuda, Kansas Department of Corrections ("KDOC") Secretary of Corrections; Darcie Holthaus, KDOC Secretary of Corrections Designee and Interstate Corrections Compact Coordinator; Donna Hook, TCF Warden; Valerie Watts, TCF PREA Coordinator and Compliance Manager; (fnu) Dietrick, TCF Correctional Officer ("CO"); John/Jane Doe, CDOC Secretary of Corrections; Michelle Calvin, TCF Health Services Administrator; and Holly Chavez, TCF Facility Service Administrator.  Plaintiff seeks injunctive relief in the form of a revocation of the Interstate Corrections Compact "to prevent violations in the future," and compensatory damages for "sexual abuse, physical damage to hand, filing fees, mental deterioration and continued pain and suffering."   (Doc. 1, at 5.)  Plaintiff also seeks punitive damages.  *Id*. at 7.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be

---

[2]  *See* Kan. Stat. Ann. §§ 76-3001 to 76-3003; Colo. Rev. Stat. §§ 24-60-1601 to 24-60-1603.

granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d

1158, 1163 (10th Cir. 2007).  The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals.  *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).  As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  *Kay*, 500 F.3d at 1218 (citation omitted).  Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'"  *Smith*, 561 F.3d at 1098 (citation omitted).  "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III.  DISCUSSION

The Court will grant Plaintiff an opportunity to file an amended complaint that complies with the Federal Rules of Civil Procedure and cures the deficiencies in her current Complaint noted below.  In submitting an amended complaint, Plaintiff should consider the following rules and deficiencies.

### 1. Rule 8

Although Plaintiff's Complaint is on a court-approved form, she submitted additional pages and exhibits consisting of over 200 pages. *See* Docs. 1, 4, 5, 8, and 10.  In filing an

amended complaint, Plaintiff must use the court-approved form and comply with Fed. R. Civ. P. 8's pleading standards.  Plaintiff must use the form by setting forth each count of her amended complaint on the form.

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Plaintiff's Complaint fails to comply with this rule.  "It is sufficient, and indeed all that is permissible, if the complaint concisely states facts upon which relief can be granted upon any legally sustainable basis.  Only a generalized statement of the facts from which the defendant may form a responsive pleading is necessary or permissible." *Frazier v. Ortiz*, No. 06-1286, 2007 WL 10765, at *2 (10th Cir. Jan. 3, 2007) (emphasis omitted) (quoting *New Home Appliance Ctr., Inc. v. Thompson*, 250 F.2d 881, 883 (10th Cir. 1957)).

## 2.  Rules 18 and 20

Plaintiff has set forth unrelated claims in her Complaint, as noted above.  She has named as defendants KDOC staff, TCF staff, and CDOC staff.[3]  Plaintiff must follow Rules 20 and 18 of the Federal Rules of Civil Procedure when filing an amended complaint.  Rule 20 governs permissive joinder of parties and pertinently provides:

(2) ***Defendants***.  Persons . . . may be joined in one action as defendants if:
(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
(B) any question of law or fact common to all defendants will arise in the action.

---

[3]  *See Trujillo v. Williams*, 465 F.3d 1210, 1222 and n.13 (10th Cir. 2006) (where New Mexico state prisoner was transferred to a facility in Virginia, the court found that "[t]o the extent that Mr. Trujillo must file separate lawsuits in two forums, the New Mexico defendants will be held accountable for their conduct in New Mexico, and the Virginia defendants will be held accountable for their conduct in Virginia," but the court noted that depending on the allegations, the claims may be able to be brought in Virginia to the extent the Virginia defendants acted as agents for the New Mexico defendants) (citation omitted).

Fed. R. Civ. P. 20(a)(2).  Rule 18(a) governs joinder of claims and pertinently provides: "A party asserting a claim . . . may join . . . as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  While joinder is encouraged for purposes of judicial economy, the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues."  *Zhu v. Countrywide Realty Co., Inc*., 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (citation omitted).  The Court of Appeals for the Seventh Circuit held in *George v. Smith* that under "the controlling principle" in Rule 18(a), "[u]nrelated claims against different defendants belong in different suits."  *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (Under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2."); *see also Gillon v. Federal Bureau of Prisons*, 424 F. App'x 722, 725 (10th Cir. 2011) (unpublished) (where amended complaint combined separate and unrelated claims, many of them arising out of different alleged incidents against multiple defendants, court rejected plaintiff's argument that his claims were related because they all allege constitutional violations relating to his overarching allegation of retaliation by prison officials).

Requiring adherence in prisoner suits to the federal rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]."  *George*, 507 F.3d at 607.  It also prevents prisoners from "dodging" the fee obligations and the three strikes provisions of the Prison Litigation Reform Act.  *Id.* (Rule 18(a) ensures "that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.").

In sum, under Rule 18(a), a plaintiff may bring multiple claims against a single defendant.  Under Rule 20(a)(2), she may join in one action any other defendants who were involved in the same transaction or occurrence and as to whom there is a common issue of law or fact.  She may not bring multiple claims against multiple defendants unless the prescribed nexus in Rule 20(a)(2) is demonstrated with respect to all defendants named in the action.

The Federal Rules authorize the court, on its own initiative at any stage of the litigation, to drop any party and sever any claim.  Fed. R. Civ. P. 21; *Nasious v. City & Cnty. of Denver Sheriff's Dept.*, 415 F. App'x 877, 881 (10th Cir. 2011) (to remedy misjoinder, the court has two options: (1) misjoined parties may be dropped or (2) any claims against misjoined parties may be severed and proceeded with separately).  In any amended complaint, Plaintiff should set forth the transaction(s) or occurrence(s) which she intends to pursue in accordance with Rules 18 and 20, and limit her facts and allegations to properly-joined defendants and occurrences.  Plaintiff must allege facts in her amended complaint showing that all counts arise out of the same transaction, occurrence, or series of transactions or occurrences; and that a question of law or fact common to all defendants will arise in this action.

### 3. Court Access

Plaintiff claims she is being denied court access.  Plaintiff claims that the law library at TCF is inadequate and inmates are required to choose between access to the library or out-of-cell time for yard or exercise.  (Doc. 1, at 10.)  Plaintiff also claims that she has not been successful in adding an attorney to the phone system, despite filing grievances on the issue.  (Doc. 1, at 14–15.)

It is well-established that a prison inmate has a constitutional right of access to the courts. However, it is equally well-settled that in order "[t]o present a viable claim for denial of access

to courts, . . . an inmate must allege and prove prejudice arising from the defendants' actions." *Peterson v. Shanks,* 149 F.3d 1140, 1145 (10th Cir. 1998) (citations omitted); *Lewis v. Casey,* 518 U.S. 343, 349 (1996) ("The requirement that an inmate . . . show actual injury derives ultimately from the doctrine of standing.").

An inmate may satisfy the actual-injury requirement by demonstrating that the alleged acts or shortcomings of defendants "hindered his efforts to pursue" a non-frivolous legal claim. *Lewis,* 518 U.S. at 351-53; *see also Burnett v. Jones,* 437 F. App'x 736, 744 (10th Cir. 2011) ("To state a claim for violation of the constitutional right to access the courts, a prisoner 'must demonstrate actual injury . . .—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement.'") (quoting *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)).

The Supreme Court plainly held in *Lewis* that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Rather, the injury occurs only when prisoners are prevented from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id.* at 355. "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

Plaintiff claims that although she can access state laws and statutes online, she is unable to access the Colorado Court of Appeals or dockets/information for cases filed in that court. (Doc. 5–1, at 1–2.) She claims that she is unable to pull up information for her pending appellate

case in Colorado.  *Id.* at 2.  She also claims that when staff at TCF sent her an application for legal help, Plaintiff responded that she "did not need it."  *Id.* at 3.  She alleges that the computer was offline or not connected on several days.[4]  *Id.*  In addition, she claims that inmates are required to choose between limited exercise/yard time, mental health, and basic care, which she claims occurs at the same time as time for the law library.  *Id.*  Plaintiff states in her grievance that she is representing herself in her appeal.  (Doc. 5–1, at 9.)  However, one of Plaintiff's other claims is that she experienced difficulty adding her attorney to the phone list.  *See, e.g.,* Doc. 5–4, at 14 ("Unit Team continues to deny adding my attorney to my phone list").

Plaintiff has failed to specify the exact legal proceedings she claims were hindered.  She mentions the appeal of her state criminal case and a state habeas action based on her conditions of confinement, so the Court assumes these are the two proceedings she relies on for her court access claim.  However, she has failed to identify the specific legal claims she raised in those proceedings, failed to explain why those claims were nonfrivolous, and failed to explain how those nonfrivolous claims were prejudiced by her inability to access law library materials.  These requirements were set forth in *Counts*,[5] where the Tenth Circuit affirmed the dismissal of the plaintiff's court access claims and found that:

> "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351, 116 S. Ct. 2174. Rather, a prisoner must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* Further, a prisoner must

---

[4]  Plaintiff filed a grievance claiming that the computer terminal was not working on December 11, 2023, and December 18, 2023.  (Doc. 5–1, at 4.)

[5]  In *Counts*, the plaintiff was convicted in Wyoming and then transferred from the Wyoming State Penitentiary to prisons in Virginia.  *Counts v. Wyoming Dep't of Corr.*, 854 F. App'x 948, 950 (10th Cir. 2021) (unpublished).  The plaintiff filed a § 1983 action claiming his prison transfer and subsequent inability to access legal materials violated his rights to adequate access to the courts.  He also claimed that his inability to bring religious items with him from Wyoming to Virginia violated his Free Exercise rights, a Wyoming disciplinary proceeding violated his Due Process rights, and that he was transferred in retaliation for challenging that disciplinary proceeding.  *Id.*

show that his or her legal claim was not frivolous because
"[d]epriving someone of a frivolous claim . . . deprives him of
nothing at all . . .." *Id.* at 353, 116 S. Ct. 2174, n. 3.

The amended complaint did not identify any nonfrivolous claims
in Counts's underlying petition for writ of review to the Wyoming
Supreme Court. Because the amended complaint did not identify
any nonfrivolous claims, the amended complaint also failed to
explain how those claims were prejudiced by alleged inadequate
access to law library materials. The amended complaint did allege
that Counts's ability to petition for rehearing was prejudiced by his
inability to access a copy of the Wyoming Rules of Appellate
Procedure. *See* ROA at 222. Yet, the amended complaint did not
identify any nonfrivolous grounds for a petition for rehearing.

The amended complaint also did not identify any nonfrivolous
claims Counts sought in his § 2254 habeas petition or motion for
injunctive relief. The amended complaint did allege that Counts's
habeas petition raised "several issues of prosecutorial misconduct."
ROA at 224. Yet, the amended complaint did not explain what
those specific issues were, why they were nonfrivolous, or how
they were prejudiced by Counts's inability to access caselaw.

In short, the amended complaint alleged that Counts was denied
access to law library materials, such as court rules and caselaw.
The amended complaint also identified Counts's petition for writ
of review to the Wyoming Supreme Court and his § 2254 habeas
petition as the relevant legal proceedings. Yet, the amended
complaint failed to identify the specific legal claims Counts raised
in those proceedings, failed to explain why those claims were
nonfrivolous, and failed to explain how those nonfrivolous claims
were prejudiced by his inability to access law library materials.
Accordingly, the amended complaint failed to allege an actual
injury, and was thus properly dismissed for failure to state a claim.

*Counts*, 854 F. App'x at 951–52; *see also Massengill v. Snyder*, No. 23-3062-JWL, 2023 WL
2475102, at *3 (D. Kan. Mar. 13, 2023) (holding that plaintiff failed to state a claim for lack of
access to the court because he alleged no actual injury when he failed "to explain why [his]
claims are non-frivolous, and fail[ed] to explain how those claims have been prejudiced by the
limited access to law library materials") (citing *Counts*, 854 F. App'x at 952).

Plaintiff alleges that she is unable to access her Colorado criminal appeal on Lexis at TCF.  It appears that Plaintiff's case is not accessible because it is "suppressed."  The Court was also unable to access her case online, and could only view the information on the attached Case Information document. *See* attached document.[6]  The document provides that: "This case is suppressed and available only to case parties."  *Id*.  Therefore, it appears that Plaintiff would face the same challenge trying to access the information online, including through Lexis, at any facility.  The case information document provides that the case is available only to parties.  Therefore, Plaintiff should contact the appellate court or her attorney to determine how to gain access.  Although the right to court access "is not diminished when a prisoner is transferred out of state," . . . "[t]he *sending* state bears the burden of providing the required state legal materials." *Garcia v. Hoover*, 161 F.3d 17, 1998 WL 614673, at *1 (10th Cir. 1998) (emphasis added) (citation omitted).

The right to access the courts does not guarantee inmates the right to a law library or to legal assistance, but merely to "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis*, 518 U.S. at 350–51 (quoting *Bounds v. Smith,* 430 U.S. 817, 825 (1977)).  The right to access the courts is "only [the right] to present . . . grievances to the courts," and does not require prison administrators to supply resources guaranteeing inmates' ability "to litigate effectively once in court" or to "conduct generalized research."  *Id*. at 354, 360.

Although Plaintiff alleges in her Complaint that she is representing herself in her appeal, the attached case information document states that she is represented by Eric A. Samler and Hollis Ann Whitson.  (*See* attached document.)  The Tenth Circuit has found that whether or not

---

[6]  The attached document was accessed on March 14, 2024, at the website listed on the document.

a party is represented by counsel or proceeding pro se "is important because a court-access claim is necessarily intertwined with the assistance *vel non* of counsel." *Carr v. Zwally*, 760 F. App'x 550, 556 (10th Cir. 2019) (unpublished) (citing *United States v. Taylor*, 183 F.3d 1199, 1204 (10th Cir. 1999) ("It is well established that providing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library."); *accord Lewis v. Clark*, 577 F. App'x 786, 796–97 (10th Cir. 2014) (unpublished) (affirming dismissal of court-access claim because prisoner was represented by counsel in underlying criminal case)); *see also James v. Zmuda*, 2022 WL 814362, at *3 (D. Kan. March 17, 2022) (where inmate transferred from Kansas to Florida argued the transfer left him without access to Kansas law and legal materials necessary to prepare his direct appeal and motion for postconviction relief, court held that "Plaintiff was represented by counsel in his direct appeal, and he does not explain how his personal inability to access Kansas state law affected the success of his direct appeal.").

It is unclear whether Plaintiff has waived her right to counsel in her criminal appeal.  The Sixth Amendment provides a right to counsel through the direct appeal of a criminal conviction. In addition, "[t[he Sixth Amendment provides criminal defendants with the right to represent themselves." *United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 2017); *see also Faretta v. California*, 422 U.S. 806, 821 (1975) ("The Sixth Amendment, when naturally read, thus implies a right of self-representation."). The decision to exercise this right, however, comes with potential disadvantages.  Even if Plaintiff has waived the right to counsel and is choosing to represent herself, the right of access to the courts is not violated by denial of law library access: "When a prisoner voluntarily . . . waives his right to counsel in a criminal proceeding, he is not entitled to access to a law library or other legal materials." *United States v. Cooper*, 375 F.3d 1041, 1052 (10th Cir. 2004) (citation omitted).

The Tenth Circuit has joined its sister circuits in holding that "a prisoner who voluntarily, knowingly and intelligently waives his right to counsel in a criminal proceeding is not entitled to access to a law library or other legal materials." *Taylor*, 183 F.3d at 1205. "[T]here is nothing constitutionally offensive about requiring a defendant to choose between appointed counsel and proceeding *pro se* without access to legal materials because 'the [S]ixth [A]mendment is satisfied by the offer of professional representation alone.'" *Id.* (quoting *United States v. Robinson*, 913 F.2d 712, 716 (9th Cir. 1990)).

### 4. Violations of the  Interstate Corrections Compact

Plaintiff's allegations regarding violations of the Interstate Corrections Compact and state statutes are subject to dismissal.  *See* Doc. 8–2.  Plaintiff alleged in her grievance that she is being "illegally detained if the Interstate Compact Agreement is violated per Kansas State Law & CO state law."  *Id*. at 7.  "Correction compacts between States, implemented by statutes, authorize incarceration of a prisoner of one State in another State's prison."  *Olim v. Wakinekona*, 461 U.S. 238, 246 (1983) (*abrogated on other grounds as recognized in Elwell v. Byers*, 699 F.3d 1208, 1214 (10th Cir. 2012)).  A transfer like Plaintiff's is authorized through the Interstate Corrections Compact.  *Fawley v. Lucero*, 2023 WL 2487323, at *1 (10th Cir. March 14, 2023) (unpublished) (citing 4 U.S.C. § 112).

In *Counts*, the plaintiff was convicted in Wyoming and then transferred from the Wyoming State Penitentiary to prisons in Virginia.  *Counts*, 854 F. App'x at 950.  The Tenth Circuit found that "the district court properly dismissed Counts's claims related to alleged violations of the Interstate Corrections Compact because 'alleged violations of the [Interstate Corrections Compact] do not constitute violations of federal law and therefore are not actionable under § 1983.'"  *Id*. at n.2 (quoting *Halpin v. Simmons*, 33 F. App'x 961, 964 (10th Cir. 2002)

(unpublished)); *see also Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006) (stating that "we agree with the district court's conclusion that violations of the ICC are not violations of federal law, and therefore are not actionable under § 1983"); *Menefee v. Werholtz*, 2009 WL 311108, at *3 (D. Kan. 2009) ("The ICC's 'procedures are a purely local concern and there is no federal interest absent some constitutional violation of these prisoners . . . [and] [b]reach of contract claims are also purely matters of state law, and are not grounds for relief under Section 1983.") (citing *Garcia v. Lemaster,* 439 F.3d 1215, 1219 n.7 (10th Cir. 2006) (citing *Ghana v. Pearce,* 159 F.3d 1206, 1208 (9th Cir.1998); *accord Stewart v. McManus,* 924 F.2d 138, 142 (8th Cir.1991)).

Courts have also found that similar interstate agreements fail to provide a federal private right of action.  In dealing with a similar agreement—the interstate agreement that permits the transfer of supervision of parolees, probationers, and supervised releasees from one state to another (the "ICAOS")—the Court in *Cooper v. Pritzker* found that plaintiff's claims were subject to dismissal, stating that:

> The Compact Clause of the United States Constitution provides that "[n]o State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State." U.S. Const. art. I, § 10, cl. 3. The ICAOS has been entered with the consent of Congress. *See* 4 U.S.C. § 112(a) ("The consent of Congress is hereby given to any two or more States to enter into agreements or compacts for cooperative effort and mutual assistance in the prevention of crime and in the enforcement of their respective criminal laws and policies, and to establish such agencies, joint or otherwise, as they may deem desirable for making effective such agreements and compacts."). And "where Congress has authorized the States to enter into a cooperative agreement, and where the subject matter of that agreement is an appropriate subject for congressional legislation, the consent of Congress transforms the States' agreement into federal law under the Compact Clause." *Cuyler v. Adams*, 449 U.S. 433, 440 (1981). Thus, Plaintiff's claims arise under federal law, which triggers this Court's federal-question jurisdiction.

Though the claims fall within the Court's subject-matter jurisdiction, neither the ICAOS nor the federal statute that authorizes the agreement expressly provides for a private right of action. And the Supreme Court has held that if a federal statute does not explicitly create a cause of action, the strong presumption is that no private cause of action should be implied. *See generally Cort v. Ash*, 422 U.S. 66, 78 (1975) (setting forth a four-part test to determine whether a statute impliedly creates a cause of action consisting of an analysis of the protected class, legislative intent, underlying statutory purpose, and traditional state law); *see also Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 175 (2008).

Plaintiff does not cite, and the Court has not found, any Tenth Circuit authority deciding whether the ICAOS creates a private right of action. The Second Circuit, however, decided the issue in *M.F. v. State of New York Exec. Dep't Div. of Parole*, 640 F.3d 491, 495 (2d Cir. 2011). There, the court said "[n]othing in the text or structure of the Compact, or of the federal statute that authorizes it, reveals any intent of Congress or of the compacting states to create private rights or remedies for offenders." *Id.* at 495. As the court explained, the ICAOS explicitly provided for federal court action under limited circumstances. Yet those limited circumstances "concern disputes either between compacting states or between a state and the Interstate Commission. The Compact does not contemplate judicial action to resolve a dispute between an offender and a compacting state." *Id.* at 496.

The Second Circuit also found the *Cort* factors to weigh against a private right of action. First, the ICAOS was entered by the states to benefit the member states: "The language of the Compact itself creates rights for the various states who are signatories to it. It does not create rights for probationers or parolees." *Id.* (citation and quotations omitted). Second, there was no indication the Compact sought to confer benefits on the offenders who would be subject to the agreement: "[T]he Compact does not even authorize supervisees to request a transfer on their own account." *Id.* Third, conferring a private right of action on offenders would be inconsistent with the purpose of the ICAOS, "since the purpose of the Compact is to 'promote public safety by systematically controlling the interstate movement of certain adult offenders,' and not to grant additional rights to those offenders[.]" *Id.* The last factor weighing against a private right of action was that challenges to supervised release were traditionally an area of state law. *Id.* As a result, the Second Circuit found "that the Compact

and its authorizing statute create neither an express nor an implied federal private right of action. Thus, the [offenders] may not challenge the [probation division's] proposed special conditions on the basis that those conditions violate the Compact." *Id.*

The same reasoning applies here. Plaintiff is an offender who asserts that various provisions of the Compact have been violated. But Plaintiff is not a member of the Compact, he is an offender who may be affected by its rules and administration. And the provisions Plaintiff claims were violated concern the process for one state to transfer supervision to another state—in other words, provisions that create rights and obligations between states, not between offenders and the state. Nothing in the Compact provides for federal court action under the circumstances Plaintiff presents here. Because neither the ICAOS nor its authorizing statute creates a federal private right of action, Plaintiff may not challenge the State of Illinois' or the State of Colorado's failure to comply with its terms. Thus, Plaintiff's claims lack an arguable basis in law, making them subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

*Cooper v. Pritzker*, 2021 WL 11470756, at *3–4 (D. Colo. Feb. 25, 2021).

### 5. Due Process

Plaintiff claims that her transfer to Kansas deprives her of a liberty interest protected by the Due Process Clause. (Doc. 8–2, at 10, 12.) Plaintiff also disagrees with her security classification at TCF, claiming that she is not a disciplinary issue or "an institutional violent offender." (Doc. 1, at 19.) "[I]t is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home state." *Olim*, 461 U.S. at 247. "Confinement in another State, unlike confinement in a mental institution, is 'within the normal limits or range of custody which the conviction has authorized the State to impose.'" *Id.* (citations omitted); *see also Bird v. Wilson*, 371 F. App'x 941, 942 (10th Cir. 2010) (recognizing that "[n]either the United States Constitution nor any

federal law prohibits the transfer of an inmate from one state to another") (citing *Montez v. McKinna*, 208 F.3d 862, 885–66 (10th Cir. 2000)).

Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). Plaintiff has not shown that her assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in

17

assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where she is housed, whether it is which facility or which classification within a facility.  *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007).  Moreover, prison officials are entitled to great deference in the internal operation and administration of the facility.  *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

### 6.  Sexual Harassment

Plaintiff alleges that she was sexually harassed when a CO watched her change clothing and "participated in voyeurism."  (Doc. 1, at 15.)  Plaintiff claims it was not properly investigated, the issue escalated, and she was sexually assaulted in the shower in October 2023. (Doc. 1, at 15.)  Plaintiff alleges that she was told that there were no cameras in the shower, and although the CO entered into the shower as part of the policy for showering, he did not have the right to re-enter or "hang out" in the area.[7]  (Doc. 1, 15.)

Absent additional information, the conduct of which Plaintiff complains does not appear to reach the magnitude of a constitutional violation as required to state a claim under § 1983. Plaintiff claims that the CO re-entered the shower and hung out, but her grievance suggests there was a plastic bag providing some degree of privacy.  Plaintiff should provide additional factual

---

[7]  Plaintiff included the response to her grievance that indicates that Plaintiff claimed that the CO was watching her while she was in the shower and that her "PREA case was found to be unsubstantiated."  (Doc. 5–3, at 3.)  In another grievance, Plaintiff states that the showers do not have curtains and suggests that "a plastic bag was used" instead.  (Doc. 5–4, at 2.)

allegations in her amended complaint regarding her claims of sexual harassment and sexual assault.

A prisoner alleging a constitutional claim of sexual harassment must allege facts to establish the objective and subjective components of an Eighth Amendment violation. *Joseph v. Fed. Bureau of Prisons*, 232 F.3d 901 (Table), 2000 WL 1532783, at *1 (10th Cir. 2000); *see also, e.g., Barney v. Pulsipher*, 143 F.3d 1299, 1310 & n.10, 1312 n.15 (10th Cir. 1998). For the objective component, the plaintiff must allege facts to show that the harassment was objectively, sufficiently serious, causing an "unnecessary and wanton infliction of pain." *Joseph*, 2000 WL 1532783, at *1–2 (internal quotation marks omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997)). As to the subjective component, the plaintiff must allege facts to show that the defendant acted with "'deliberate indifference' to a substantial risk of serious harm to an inmate." *Barney*, 143 F.3d at 1310 (quoting *Farmer*, 511 U.S. at 834); *see also Joseph*, 2000 WL 1532783, at *1–2.

Where a prisoner alleges a guard made inappropriate or suggestive comments but did not touch him, courts have generally found the harassment was not sufficiently serious to meet the objective component of an Eighth Amendment claim. *See, e.g., Barney*, 143 F.3d at 1310 n.11 (noting that allegation of "severe verbal sexual harassment and intimidation" alone—in the absence of sexual "assault[ ]"—is insufficient to state an Eighth Amendment claim); *Austin v. Terhune,* 367 F.3d 1167, 1171 (9th Cir. 2004) ("Although prisoners have a right to be free from sexual abuse, whether at the hands of fellow inmates or prison guards, . . . the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment." (internal citation omitted)); *Howard v. Everett,* 208 F.3d 218 (Table), 2000 WL 268493, at *1 (8th Cir.

2000) (unpublished) (sexual harassment consisting of comments and gestures, absent contact or touching, "does not constitute unnecessary and wanton infliction of pain").  The Tenth Circuit has found that "[m]ere verbal threats or harassment do not rise to the level of a constitutional violation unless they create 'terror of instant and unexpected death.'" *Alvarez v. Gonzales*, 155 F. App'x 393, 396 (10th Cir. 2005) (unpublished) (finding no constitutionally protected right where plaintiff claimed guard antagonized him with sexually inappropriate comment), *quoting Northington v. Jackson,* 973 F.2d 1518, 1524 (10th Cir. 1992).

### 7. Retaliation

Plaintiff alleges that she was retaliated against for reporting the PREA issue and her job was taken away.  (Doc. 1, at 17.)  "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper."  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.  Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir.

20

1990).  "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive."  *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

Plaintiff suggests in her grievances that she was denied a job and received a false disciplinary report after making her PREA report and other reports against staff. (Doc. 5–4, at 14.)  She also claims that she was retaliated against for filing a habeas action and civil action, by being subjected to continued cell searches, the denial of mental health for going to the library, a violation of due process for grievances, and a frivolous disciplinary report.   (Doc. 8–1.)

Plaintiff's grievance suggests that a prison official who threatened her was allowed to hold her disciplinary hearing.  *Id*. at 3.  She claims that she requested a different hearing officer when she learned that Vandyke was the assigned hearing officer.   *Id*.  Plaintiff claims that the offense was minor, her loss of privileges was more severe than it should have been, and no one else has been written up for this.[8]  *Id*. at 4–5, 7.  She attached the Restriction from Privileges Checklist that shows her privileges were suspended for 10 days.   *Id*. at 8. Although she acknowledges that access to a tablet is a privilege, she claims her tablet was taken away to prevent her from filing grievances.  *Id*. at 4–7.  Plaintiff alleges that the timing of the DR shows retaliation.  She claims that she "entered into a contract in Dec. 2023," but the DR was filed in February, two months after the transaction was approved and after she filed her habeas and civil action.  *Id*. at 7.  Plaintiff has not named Vandyke as a defendant in this case.

Plaintiff should include additional factual support in her amended complaint.  Plaintiff claims that she is being forced to choose between out-of-cell time to either use the law library,

---

[8]   The details of the prohibited contract entered into by Plaintiff are unclear, but Plaintiff indicates that she was using the tablet to send out gifts on a Jewish holiday.  (Doc. 8–1, at 7.)

participate in yard/exercise, or receive mental health treatment.  (Doc. 8–1, at 12.)  Plaintiff does not allege that she is the only one being required to make a choice as to how to spend out-of-cell time.  If other prisoners face the same obstacles, it does not suggest she is being retaliated against by being forced to choose how to spend her out-of-cell time.  Plaintiff should clarify this in her amended complaint.  She should also indicate who she believes retaliated against her regarding her disciplinary proceedings when she has not listed the hearing officer as a defendant.  She should also clarify the details of her disciplinary report.  If she was using the tablet to process online orders, this could be the rationale for the 10-day restriction on use of the tablet, instead of an attempt to prevent her from filing grievances on the tablet.  Plaintiff has also failed to give details on what job she had and how she lost it.  Plaintiff should provide additional factual allegations to support her retaliation claim in her amended complaint.

### 8.  Violations of Prison Policies/Procedures

Plaintiff claims that a staff member at TCF was angry that doors were opened in Pod 1B and began yelling and slamming doors.  (Doc. 1, at 17.)  Plaintiff claims that as she was leaving aerobics her hand was hanging out of the door and the staff member slammed the door on Plaintiff's right ring finger.  (Doc. 1, at 18.) Plaintiff acknowledges that she received medical care for her finger, but alleges that the facility failed to follow its own policy for reporting the incident. (Doc. 1, at 18.)

Plaintiff alleges that staff failed to follow facility policies and procedures in responding to grievances and in reporting her finger injury.   The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal

quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation).  As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007) (unpublished).

Plaintiff also submitted grievances alleging that prison policies and procedures were not followed in her PREA investigation.  *See* Doc. 5–4, at 7. Plaintiff claimed that the PREA process was "mishandled" and failed to follow PREA regulations. (Doc. 5–4, at 2.)  The PREA "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission," but there is nothing in the PREA to indicate that it created a private right of action, enforceable under § 1983.  *Haffner v. Geary Cty. Sheriff's Dep't*,  No. 18-3247-SAC, 2019 WL 1367662, at *4 (D. Kan. Mar. 26, 2019) (citations omitted) (collecting cases). "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Id.* (emphasis in original) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)).  Plaintiff cannot pursue a § 1983 claim based on the alleged failure to comply with the PREA.

### 9. Grievances

Plaintiff acknowledges that a grievance procedure is in place and that she used it.  She

claims that responses to grievances were untimely and "incompetent." *See, e.g.,* Doc. 5–1, at 10; Doc. 5–3, at 1–2; Doc. 5–4, at 11, 14; Doc. 8–2, at 17 ("All grievances have been responded [sic] with incompetent answers.").  Any claim relating to Plaintiff's dissatisfaction with responses to her grievances is subject to dismissal.  The Tenth Circuit has held several times that there is no constitutional right to an administrative grievance system.  *Gray v. GEO Group, Inc.*, No. 17–6135, 2018 WL 1181098, at *6 (10th Cir. March 6, 2018) (citations omitted); *Von Hallcy v. Clements*, 519 F. App'x 521, 523–24 (10th Cir. 2013); *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011); *see also Watson v. Evans*, Case No. 13–cv–3035–EFM, 2014 WL 7246800, at *7 (D. Kan. Dec. 17, 2014) (failure to answer grievances does not violate constitutional rights or prove injury necessary to claim denial of access to courts); *Strope v. Pettis*, No. 03–3383–JAR, 2004 WL 2713084, at *7 (D. Kan. Nov. 23, 2004) (alleged failure to investigate grievances does not amount to a constitutional violation); *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003) (finding that "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials").  Any claims regarding the grievance process and the failure to properly respond to grievances are subject to dismissal for failure to state a claim.

## IV. Motion for Preliminary Injunction

Plaintiff filed a motion requesting a preliminary injunction (Doc. 9).  Plaintiff asks the Court to release her from custody in Kansas and to return her to Colorado.  Plaintiff alleges that the CDOC Secretary of Corrections transferred her to Kansas knowing the transfer would deprive her of life's necessities and/or place her in a substantial risk of harm.  Plaintiff alleges that the defendant transferred her in retaliation for filing complaints and grievances.  (Doc. 9, at 2.)  Plaintiff alleges that she was transferred to Kansas and placed in a higher custody level.  *Id.*

24

Plaintiff alleges that defendants knew Plaintiff would not be successful in Kansas because they were aware that another inmate transferred to Kansas experienced similar issues and was denied proper medical care. *Id*. at 3. Plaintiff also alleges that she was transferred to Kansas to deny her access to the courts because TCF does not have an adequate law library or resources. *Id*. at 4. Plaintiff alleges that TCF does not allow her to practice her religion with Kosher meals, and does not provide adequate mental healthcare. *Id*. at 7–8.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Plaintiff has not set forth a likelihood of success on the merits. As set forth above, Plaintiff's Complaint is subject to dismissal. Her claims regarding violations of the Interstate Corrections Compact are not actionable under § 1983. Plaintiff has provided no authority for this Court to order her transfer back to Colorado. *See Rivers v. King*, 23 F. App'x 905, 908 n.4 (10th Cir. 2001) ("[T]his court has no jurisdiction to mandamus state officials because the statutory power to grant such writs is provided only against federal officials."); *see also Lynn v. Simmons*, 32 Kan. App. 2d 974, 981 (2003) ("We conclude that the act of transferring an inmate to, or returning an inmate from, an interstate prison is not a legally specified duty that is properly the subject of a mandamus action . . . [and plaintiff] had no protected liberty interest to remain in a Kansas prison.").

"[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004). Plaintiff alleges that she will suffer irreparable

harm if she is not transferred back to Colorado because her right hand will not be restored to its full usefulness and she faces a potential dismissal of one legal action due to an approaching deadline. *Id.* at 11. She claims that another action has been dismissed as untimely. *Id.* She also claims that she continues to be placed around the CO that sexually harassed and assaulted her. *Id.*

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must

show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met her burden to make a heightened showing that entry of a preliminary injunction is warranted; she has not demonstrated a likelihood of success on the merits such that her right to relief is clear and unequivocal.  However, the Court will deny the motion without prejudice to refiling the motion if any of her claims survive screening.

## V.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's Complaint should not be dismissed for the reasons stated herein.  Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein.  To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (24-3027-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a

complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter may be dismissed without further notice for failure to comply with the Federal Rules of Civil Procedure.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion requesting a preliminary injunction (Doc. 9) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **April 12, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **April 12, 2024,** in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated March 15, 2024, in Kansas City, Kansas.**

**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**