## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**LETECIA STAUCH,**

>     **Plaintiff,**

>     v.                                                    CASE NO.  24-3027-JWL

**JEFF ZMUDA, et al.,**

>     **Defendants.**

### <u>MEMORANDUM AND ORDER</u>

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Plaintiff is in custody at the Topeka Correctional Facility in Topeka, Kansas ("TCF").  Plaintiff is a Colorado Department of Corrections' ("CDOC") prisoner housed at TCF through the Interstate Corrections Compact.  The Court granted Plaintiff leave to proceed in forma pauperis.  On March 15, 2024, the Court entered a Memorandum and Order to Show Cause (Doc. 11) ("MOSC"), directing Plaintiff to show good cause why her Complaint should not be dismissed for the reasons set forth in the MOSC, or to file an amended complaint to cure all the deficiencies.  This matter is before the Court for screening Plaintiff's Amended Complaint (Doc. 12).  The Court's screening standards are set forth in the MOSC.

Plaintiff alleges in Count I of her Amended Complaint that she was denied court access when she was denied phone access to her attorney and when Defendants interfered with her legal mail.  Plaintiff alleges that from August 2023 to December 2023, she was denied phone access to her attorney regarding her direct criminal appeal, and when she attempted to write to her attorney her legal mail was confiscated.  She claims the mail tampering has taken place from September 2023 to the present.  Plaintiff claims that she was forced to file a request to represent herself in her direct criminal appeal.  She also claims that her legal mail was tampered with when the court

1

presiding over her Colorado action regarding her conditions of confinement attempted to reach her.

As Count II, Plaintiff alleges cruel and unusual punishment and deliberate indifference to her health and safety.  Plaintiff bases this claim on the following conditions:  (1) exposure to toxins from sewage leaks that cause waste to return to inmates' cells about two times a week; (2) inoperable sinks that lack hot water for sanitation; (3) obvious signs of mold leading to medical issues; (3) exposure to contaminated water on January 14, 2024, when Defendants failed to advise inmates about a warning from the city of Topeka for 24 hours; (4) and inadequate ventilation adding to the exposure to toxins.  Plaintiff alleges that the conditions have caused breathing issues, extreme headaches, dizziness, nausea, daily nose bleeds, and diminished lung capacity.  Plaintiff also alleges that the windows leak, causing rain, wind, and vermin to enter through the windows.  Plaintiff claims that the food is not prepared under clean conditions, is generally cold, and does not follow nutritional guidelines.

Plaintiff also alleges deliberate indifference regarding her medical care.  Plaintiff alleges that her right hand was injured by staff and she was told by medical that she could not receive any treatment beyond talking to the doctor in January 2024.  Plaintiff alleges that she has "potential permanent nerve damage in [her] right hand."  (Doc. 1, at 13.)

Plaintiff also raises an Eighth Amendment claim based on an alleged sexual assault occurring at the TCF.  She claims that she was sexually harassed by CO Dietrick in August 2023, and then she was sexually assaulted by Dietrick on two separate occasions in October 2023.  Plaintiff alleges that she made a PREA report, and had her job as a porter taken away in retaliation for reporting the sexual harassment and sexual assault.  She alleges that she did not go to work on the day of the PREA investigation and was given a Disciplinary Report for "Failure

to go to work," even though she was told not to go because of the investigation.  *Id*. at 14.  Plaintiff alleges that the DR was dismissed and she was found not guilty.

Lastly, Plaintiff claims Defendants were deliberately indifferent to her safety by placing her around "institutional violent offenders."  *Id*. at 15.  Plaintiff alleges that other inmates are known to be aggressive and "institutionally violent."  Plaintiff alleges that this constitutes an "atypical situation" and has led to an increase in symptoms disturbing her functioning.  *Id*. at 16.  She claims that she is the only inmate without disciplinary issues that is not allowed to participate in programming and classes at TCF.

As Count III, Plaintiff alleges violations of her right to freely exercise her religion and an equal protection violation.  She alleges that she was told she could not check "Native American" and also attend church services "about God" because she would have to attend smudging instead.  She claims she entered TCF as Jewish and was told they did not recognize Jewish and that no one at I/J cellhouse was listed as Jewish.  She alleges that male inmates are allowed to attend as many church services as they like, but she was forced to choose.

Plaintiff alleges retaliation as Count IV.  Plaintiff alleges that she has been subjected to retaliation for filing her state habeas case and this § 1983 case.  Plaintiff alleges that she received a letter on February 1, indicating she was being investigated for her tablet use and that the tablet would be revoked during the investigation.  Plaintiff alleges that this was done in retaliation for her filing grievances and the PREA.  She alleges that the DR she received did not have tablet suspension as part of the punishment, and her tablet use was suspended to keep her from filing electronic grievances.  Plaintiff also alleges that after filing this § 1983 action, she has been subjected to lengthy room searches.  A search on the day she filed this action lasted an hour, and another search on March 22, 2024, lasted three hours and ten minutes and included staff going

through her legal box and reading information.  Plaintiff was told that the officer was looking for a number.  Plaintiff also alleges that her job as porter was taken away as a form of retaliation.

Plaintiff names as defendants:  Jeff Zmuda, Kansas Department of Corrections ("KDOC") Secretary of Corrections; Darcie Holthaus, KDOC Secretary of Corrections Designee and Interstate Corrections Compact Coordinator; Donna Hook, TCF Warden; Valerie Watts, TCF PREA Coordinator and Compliance Manager; (fnu) Dietrick, TCF Correctional Officer ("CO"); Dalton Hartpence, TCF Administration; Larry Turner, CDOC Designee and Interstate Corrections Office; Holly Chavez, TCF Facility Service Administrator; Centurion Medical, TCF Medical Provider; and (fnu) Van Dyke, 1st Sgt/Disciplinary Administrator at TCF.  Plaintiff seeks injunctive relief to prevent continued violations and compensatory damages.  (Doc. 1, at 6.)

## II. DISCUSSION

### 1. Due Process

Plaintiff disagrees with her security classification at TCF, claiming that she is not a disciplinary issue and is housed around "institutional violent offenders."  "Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of  . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)).  This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted).  To prevail on a failure to protect claim, a plaintiff must show:  "(1) 'that the conditions of [her] incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other

words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id.* (citing *Marbury*, 936 F.3d at 1238). Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id.* (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

Plaintiff alleges that she is housed around "institutionally violent" inmates, but fails to allege that that she relayed any specific threats to Defendants or that Defendants were aware of a strong likelihood of injury to her. *See Gray v. Sorrels*, 744 F. App'x 563, 571 (10th Cir. 2018) (unpublished) (finding allegations of failure to protect too conclusory to establish personal participation and failure to allege specific content of emails); *see also Leonard v. Lincoln Cty. Bd. of Comm'rs*, 790 F. App'x 891, 894 (10th Cir. 2019) (unpublished) (finding plaintiff's general request and grievance did not put jail officials on notice that he was at risk of being assaulted).

Plaintiff takes issue with being housed around inmates that she perceives as "institutionally violent" inmates. Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence

in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted). Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). Plaintiff has not shown that her assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where she is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, prison officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979). Plaintiff's claims regarding her security classification and housing at TCF are dismissed.

### 2. Claims against Valerie Watts

Plaintiff alleges that Valerie Watts, the PREA coordinator, "failed to follow policy or rules" resulting in a clear indication of deliberate indifference. Plaintiff has failed to state a claim against Valerie Watts regarding the PREA investigation. The violation of a prison regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard." *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). As the Tenth Circuit has stated:

> [N]o reasonable jurist could conclude that [a plaintiff's] claim that prison officials deprived him of due process by violating internal prison regulations rises to the level of a due process violation. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison [They are] not designed to confer rights on inmates…." *Sandin v. Conner*, 515 U.S. 472, 481-82, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995).

*Brown v. Wyoming Dept. of Corrections*, 234 F. App'x 874, 878 (10th Cir. 2007) (unpublished).

The PREA "authorizes the reporting of incidents of rape in prison, allocation of grants, and creation of a study commission," but there is nothing in the PREA to indicate that it created a private right of action, enforceable under § 1983. *Haffner v. Geary Cty. Sheriff's Dep't*, No. 18-3247-SAC, 2019 WL 1367662, at *4 (D. Kan. Mar. 26, 2019) (citations omitted) (collecting

cases).  "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law.*" *Id.* (emphasis in original) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)).  Plaintiff cannot pursue a § 1983 claim based on the alleged failure to comply with the PREA.  Plaintiff's claims against Valerie Watts are dismissed for failure to state a claim.

### 3.  Medical Care

Plaintiff claims that she has been denied proper medical care regarding damage to her hand.  As the Court found in the MOSC, Plaintiff claims that as she was leaving aerobics her hand was hanging out of the door and the staff member slammed the door on Plaintiff's right ring finger.  (Doc. 11, at 22.)  The Court found that Plaintiff acknowledged that she received medical care for her finger, but argued that the facility failed to follow its own policy for reporting the incident.  *Id.*  Now, Plaintiff claims that she has an increased risk that her hand will never be restored to its full usefulness.  (Doc. 12, at 12.)  She claims that this constitutes deliberate indifference by Centurion because "it is a policy of the Contractor to provide treatment that is below the basic level of standard of care."  *Id.*  Plaintiff alleges that she was told by "medical" that she could not receive any treatment beyond talking to the doctor in January 2024. *Id.* at 12–13.  Plaintiff claims that Centurion is indifferent because they "say that they cannot provide any treatment to restore mobility, assist with the permanent nerve damage and the sharp pains and swelling."  *Id.* at 13.

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the

'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).   A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment.  *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff has failed to show that a named defendant disregarded an excessive risk to her health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference.

The only healthcare provider Plaintiff names in her Amended Complaint is Centurion.  In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)."  *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted).  A corporation may not be held liable based upon respondeat superior because "vicarious liability is inapplicable to  . . . § 1983 suits."  *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation.").

Plaintiff has failed to state a claim against Centurion regarding her medical care. Plaintiff's allegation that the relevant policy is Centurion's substandard care fails to show the

type of policy warranting imposition of liability.  She has failed to allege a formal statement by the company or a persistent, well-settled practice.  Plaintiff's claims against Centurion are dismissed.

### 4. Remaining Claims

The Court finds that the proper processing of Plaintiff's remaining claims cannot be achieved without additional information from appropriate KDOC officials.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  Accordingly, the Court orders the appropriate KDOC officials of to prepare and file a *Martinez* Report regarding the remaining claims.  Once the report has been received, the Court can properly screen Plaintiff's remaining claims under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** Plaintiff's claims regarding her security classification and housing assignment at TCF are dismissed.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Valerie Watts and Centurion are dismissed.

**IT IS FURTHER ORDERED** that**:**

(1)     The KDOC shall submit the *Martinez* Report by **June 28, 2024**.  Upon the filing of that Report, the Court will screen Plaintiff's Amended Complaint.  If the Amended Complaint survives screening, the Court will enter a separate order serving the remaining defendants.

(2)     KDOC officials responsible for the operation of the TCF are directed to undertake a review of the subject matter of the remaining claims in the Amended Complaint:

        a.      To ascertain the facts and circumstances;

        b.      To consider whether any action can and should be taken by the institution to resolve the subject matter of the Amended Complaint; and

11

      c.     To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Amended Complaint and should be considered together.

(3)     Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4)     Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)     Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)     No motion addressed to the Amended Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Amended Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, counsel for the KDOC, and the

Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated April 29, 2024, in Kansas City, Kansas.**

**<u>S/  John W. Lungstrum</u>**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**