# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LETECIA STAUCH,            )
                                )
               **Plaintiff,**    )
                                )
**v.**                                )
                                )   **Case No. 24-3027-JWL**
**JEFF ZMUDA,** *et al.,*         )
                                )
              **Defendants.**    )
                                )

## REPORT IN "MARTINEZ VS AARON" INVESTIGATION
## CIVIL RIGHTS COMPLAINT

On February 16, 2024, Plaintiff Letecia Stauch filed a *pro se* civil rights action pursuant to 42 U.S.C. §1983 in the United States District Court for the District of Kansas. (Doc. 1). On April 29, 2024, the Court ordered the preparation of a *Martinez v. Aaron* report by the Kansas Department of Corrections ("KDOC"). (Doc. 13).

Plaintiff is a Colorado Department of Corrections' resident housed at TCF through the Interstate Corrections Compact. Plaintiff was transferred to TCF on August 14, 2023. Plaintiff is 40 years of age. (Exhibit 1, p. 1).

Plaintiff names as defendants: Jeff Zmuda, Secretary of Corrections; Darcie Holthaus, KDOC Secretary of Corrections Designee and Interstate Corrections Compact Coordinator; Dona Hook, TCF Warden; Valerie Watts, TCF PREA Coordinator and Compliance Manager; Travis Dietrick, TCF Correctional Officer ("CO"); John/Jane Doe, CDOC Secretary of Corrections; Michelle Calvin, TCF Health Services Administrator; and Holly Chavez, TCF Facility Service Administrator.

## SUMMARY OF ALLEGATIONS AND RELIEF SOUGHT

The Court, in its Memorandum and Order filed on April 29, 2024, dismissed parts of Plaintiff's Amended Complaint. (Doc. 13). The remaining claims are addressed as follows:

In Count I, Plaintiff alleges that she has requested that her attorney be placed on her Approved Calling List and was denied. Plaintiff claims to have appealed the decision up to the KDOC Secretary, Jeff Zmuda. Plaintiff adds that her legal mail has been confiscated and tampered with by TCF's Classifications Administrator, Dalton Hartpence. Plaintiff claims that her legal mail has been tampered with from September of 2023 to present. (Doc. 12, p. 7).

In Count II, Plaintiff alleges the following environmental and health hazards have gone unaddressed during her time at TCF: exposure to frequent sewage leaks into her cell and other cells near her; sinks that do not produce hot water in her cell or other cells; mold that has led her to have multiple health issues; exposure to contaminated water on January 14, 2024; inadequate ventilation; TCF staff denying access to cleaning products; leaking windows which allow temperature extremes and vermin into her cell; and inadequately prepared food that does not meet nutritional guidelines. (Doc. 12, p. 9-12). Plaintiff also alleges the TCF retaliated against her for filing a PREA complaint by removing her from a porter position and for issuing her a disciplinary report for failing to appear for work. (Doc. 12, p. 14-15).

In Cout III, Plaintiff claims that TCF has denied her the ability to register as Native American or Jewish for religious services. Plaintiff alleges that she was told she could not attend church services because she had to attend smudging under KDOC policy. The complaint continues to state that Plaintiff was told she could not attend church services if recognized as Jewish and that the faith was not recognized in I/J cellhouse. Plaintiff alleges that she was forced by TCF staff to change her religious affiliation and to choose one religion over another. The complaint continues to state that

Plaintiff was told by the TCF Chaplain that her religious freedoms were being limited by TCF leadership and that male residents had greater freedom. (Doc. 12, p. 17-20).

In Count IV, Plaintiff alleges that she is being retaliated against due to filing legal actions against TCF and for filing a PREA complaint. Plaintiff claims that she was denied access to her TCF tablet due to filing grievances pointing out what she claims are several TCF violations. Plaintiff states that she was issued a disciplinary report for mailing out gifts, as an attempt to keep her from continuing to file electronic grievances and as a form of retaliation. The complaint continues to allege retaliation for filing a lawsuit, in which Plaintiff claims her cell underwent lengthy room searches; she claims officers conducting the search read through her legal mail. (Doc. 12, p. 20-24).

Plaintiff seeks a preliminary injunction to prevent the alleged violations from continuing and compensatory damages for the KDOC allegedly violating her constitutional rights, causing her emotional harm, and to cover filing fees. (Doc. 12, p. 6).

## INVESTIGATION

### A.  Count I.

The complaint states that Holly Chavez, TCF's Facility Service Administrator, denied Plaintiff the ability to add her attorney to her Allowed Calling List from August to December of 2023. (Doc. 12, p. 7). Ms. Chavez denies having received any such request from Plaintiff. (Exhibit 2, ¶ 5). Ms. Chavez would not have been the appropriate person to make the request(s) to since she does not participate in that process, nor does she manage the lists. (Exhibit 2, ¶ 6).

Internal Management Policy and Procedure ("IMPP") 10-111D, Section III.E, sets forth the process for residents to add an attorney to their Allowed Calling List. (Exhibit 3, p. 5). Accordingly, residents are required to fill out an Allowed Calling List Request Form and sign it, along with a signature from their unit team. The unit team then sends the form to TCF's Resident Technology

3

Administrator and TCF's Resident Telephone Service provider for review and entry.

On October 29, 2023, Plaintiff sent an electronic message to her unit team requesting an attorney from Colorado be added to her Approved Calling List. (Exhibit 10, p. 1 & 2). However, TCF's Resident Technology Administrator, Brandon Kennedy, has not received an Approved Calling List Form from Plaintiff. (Exhibit 4, ¶ 1-3). Plaintiff's unit team has also not received or signed an Approved Calling List Form from Plaintiff. (Exhibit 5, ¶ 7). Ms. Chavez is not a part of Plaintiff's unit team, nor is she a Resident Telephone Service provider. (Exhibit 2, ¶ 3).

Plaintiff claims that she appealed the alleged denial to TCF's Warden, Dona Hook, and then to the KDOC's Secretary, Jeff Zmuda. (Doc. 12, p. 7). A thorough review of Plaintiff's grievances and requests since her date of arrival at TCF did not yield any documented appeal. Warden Hook denies having received or responded to an appeal regarding Plaintiff's Approved Calling List. (Exhibit 6, ¶ 3). The Secretary's Designee, Darcie Holthaus, who reviews grievances that are appealed to Secretary Zmuda, denies having received or reviewed any such appeal. (Exhibit 7, ¶ 3).

Alternatively, under IMPP 10-111D, Section III.E.3.a, attorneys may place confidential calls with their clients after submitting an Application for Registration as a Registered Attorney, which is Attachment B of the IMPP. (Exhibit 3, p. 5, 6, & 9). This is available even if a resident has not added their attorney to their Approve Call List. Plaintiff's attorney contacted the KDOC on July 10, 2024, in which he conveyed his interest in having a confidential call with Plaintiff. The attorney was provided the registration form and returned it completed on July 10, 2024; it was approved on July 11, 2024. (Exhibit 20). Prior to this development, no evidence has been found to support either party attempting to place a call to the other.

Plaintiff next alleges that mail she sends to her attorney has been confiscated and tampered with by TCF's Classifications Administrator, Dalton Hartpence. (Doc. 12, p. 7). Plaintiff further

claims this has happened in front of an unidentified TCF officer. *Id*. The TCF tracks all outgoing and incoming mail. Plaintiff has sent 16 items of legal mail since her arrival at the TCF. (Exhibit 11). Plaintiff does not appear to have attempted to send her Colorado attorney legal mail but has sent legal documents and/or correspondence to other parties. (Exhibit 11).

Mr. Hartpence denies having confiscated or tampered with Plaintiff's mail. (Exhibit 8, ¶ 4). Since he is not a member of Plaintiff's unit team or facility security, he would not have had the ability to interfere with Plaintiff's legal mail. (Exhibit 8, ¶ 3). Plaintiff does not appear to have submitted a grievance or other complaint to TCF staff regarding her legal mail being confiscated or tampered with. (Exhibit 2, ¶ 8). Plaintiff did not appeal any claim or grievance regarding confiscated or tampered legal mail to the Secretary for review. (Exhibit 7, ¶ 7).

Finally, Plaintiff claims that shortcomings in TCF's legal library hindered her ability to pursue litigation in Colorado. (Doc. 12, p. 8). On December 20, 2023, Plaintiff filed a grievance stating the TCF's legal library did not allow her access to Colorado's statutes. (Exhibit 10, p. 3). Plaintiff was advised by Ms. Chavez that TCF staff would provide her with the specific statute(s) she requires. (Exhibit 10, p. 4). Plaintiff's complaint does not specify what, exactly, TCF's legal library is not sufficiently providing her.

## B.    <u>Count II.</u>

Plaintiff claims that she has been, and is still being, exposed to frequent sewage backups in her cell and other cells near her. (Doc. 12, p. 9). Plaintiff has been housed in 10 cells since her arrival at TCF. (Exhibit 5, ¶ 4). TCF's Physical Plant Supervisor, Alfred Schimmel, who oversees the facility's maintenance and environmental conditions, confirmed that no sewage backups have been observed in any of TCF's cells, including the 10 cells Plaintiff has resided. (Exhibit 9, ¶ 3).

While no sewage has entered residential cells, wastewater has backed up into certain showers.

(Exhibit 9, ¶ 4). Most of these backups are the result of residents intentionally clogging toilets and sinks with clothing or bedding, which causes the drainage water to rise in the shower area. (Exhibit 9, ¶ 5). When wastewater is reported, maintenance personnel try to immediately respond and blocked off traffic to the area. (Exhibit 9, ¶ 6). TCF is in the process of upgrading its solid waste sewer system to address this issue and it is expected to be completed in 2025. (Exhibit 9, ¶ 7).

Plaintiff claims that there is no hot water available in any of the cells in her unit and that the sinks are inoperable. (Doc. 12, p. 9). TCF heats its water with older water heaters which sometimes take up to a minute to produce heated water in cold weather. (Exhibit 9, ¶ 8). Hot water is available in all TCF sinks and showers, though it may take a few seconds to become available. (Exhibit 9, ¶ 9). At no point have any of Plaintiff's current or prior cells been without access to heated water. (Exhibit 9, ¶ 10).

TCF conducts a monthly Health and Sanitation Inspection, as required by department policy, which is recorded in a monthly report for all buildings on TCF grounds. All relevant Health and Sanitation Inspection Reports for I Cell House ("ICH"), where Plaintiff has lived since her arrival to TCF on August 14, 2023, have been retrieved. (Exhibit 19). Since August 2023, hot water temperatures have been confirmed to range from 100 degrees Fahrenheit to 120 degrees Fahrenheit for each ICH inspection. (Exhibit 19, p. 5, 10, 15, 20, 25, 30, 35, 40, 45, 50, & 55).

Plaintiff claims that she has been exposed to mold during her time at TCF. (Doc. 12, p. 9). The only document in which Plaintiff mentions mold is in a grievance that claims inadequate medical care from a Centurion nurse. (Exhibit 10, p. 7). Plaintiff did not file a grievance or maintenance request regarding any suspected mold during her time at TCF. (Exhibit 2, ¶ 9; Exhibit 7, ¶ 7; Exhibit 9, ¶ 11). TCF's Maintenance Department investigates all claims of mold and has not identified any species of mold in Plaintiff's current or previous cells. (Exhibit 9, ¶ 12).

Plaintiff claims that she was exposed to contaminated water due to TCF staff failing to alert her to a water advisory warning issued for Shawnee County on January 14, 2024. (Doc. 12, p. 9). The KDHE's advisory was specifically directed at the Metro Topeka Airport Authority and Shawnee County Rural Water District 1C. Out of an abundance of caution, steps were taken to prevent any risk to resident health. (Exhibit 6, ¶ 6).

To ensure each resident was aware of the advisory, including residents that did not have tablet access, unit teams followed up the electronic notice with a verbal notice to their respective residents. (Exhibit 6, ¶ 7). Maintenance staff also posted warnings on all facility water fountains, the facility shut off its water supply, and residents were issued bottles of water. (Exhibit 6, ¶ 8). Plaintiff did not appeal any claim or grievance regarding alleged contaminated water exposure to the Secretary for review. (Exhibit 7, ¶ 7).

Plaintiff claims that her cell has inadequate ventilation which has forced her to inhale toxins. (Doc. 12, p. 10). The TCF has contracted with P1 Groupe, Inc., which maintains air quality and ventilation systems for the facility. (Exhibit 9, ¶ 13). The Maintenance Department has not found inadequate ventilation in Plaintiff's current or previous cells or in the I cellhouse generally. (Exhibit 9, ¶ 14). Plaintiff did not appeal any claim or grievance regarding inadequate ventilation in her cell to the Secretary for review. (Exhibit 7, ¶ 7).

Plaintiff claims that TCF staff denies her access to cleaning products. (Doc. 12, p. 10). Plaintiff's Unit Team Manager, Linda Hull-Viera, does not recall a single instance in which Plaintiff was denied the ability to retrieve cleaning products or be provided cleaning products by security personnel. (Exhibit 5, ¶ 5). To the contrary, residents are strongly encouraged to utilized cleaning supplies to maintain their living spaces. (Exhibit 5, ¶ 6). Doing so provides a safer and healthier environment for the resident and for security personnel who conduct cell searches. (Exhibit 5, ¶ 6).

Plaintiff did not appeal any claim or grievance regarding access to cleaning supplies to the Secretary for review. (Exhibit 7, ¶ 7).

Plaintiff claims that leaking windows allow for temperature extremes and vermin access to her cell. (Doc. 12, p. 9). No evidence of window leaks, mold, or vermin have been found by TCF's Maintenance Department in any of the cells that Plaintiff has resided. (Exhibit 9, ¶ 12). Plaintiff's claim that her cell experiences extreme temperature changes is unsubstantiated and has not been reported to TCF's Maintenance Department. (Exhibit 9, ¶ 11). Since Plaintiff has lived at TCF, not one Health and Sanitation Inspection Report has found a window opening that would allow a bug/rodent infestation in ICH. (Exhibit 19, p. 5, 10, 15, 20, 25, 30, 35, 40, 45, 50, & 55). Plaintiff did not appeal any claim or grievance regarding leaking windows, temperature extremes, or vermin to the Secretary for review. (Exhibit 7, ¶ 7).

Plaintiff claims that the food she receives is inadequately prepared and does not meet nutritional guidelines. (Doc. 12, p. 11). TCF contracts with Aramark, Inc. for resident food services. Aramark has 2 full-time nutritionists, Cynthia Irizarry and Kate Crowley, that ensure meals are nutritionally compliant with state and federal standards. (Exhibit 6, ¶ 9). TCF is in the process of renovating its kitchen area and meals are being prepared in a mobile facility on TCF grounds. (Exhibit 6, ¶ 10).

Meals are placed in portable food warmers and are distributed from the mobile facility as quickly as possible. Reports of cold meals are uncommon and are addressed on a case-by-case basis to ensure it does not occur twice. Meals are distributed from this mobile facility as quickly as possible in portable food warmers. (Exhibit 6, ¶ 12). The warmers are sufficient to keep meals warm until they reach the resident. (Exhibit 6, ¶ 12). All meals are prepared in a sanitary manner and with the same care as if they were being prepared in the facility kitchen. (Exhibit 6, ¶ 11).

Plaintiff did not appeal any claim or grievance regarding food sanitation or nutrition concerns to the Secretary for review. (Exhibit 7, ¶ 7).

Plaintiff also alleges the TCF retaliated against her for filing a PREA complaint by removing her from a porter position and for issuing her a disciplinary report for failing to appear for work. (Doc. 12, p. 14). On December 13, 2023, Plaintiff was issued a disciplinary report for failing to report to work for two days, under K.A.R. 44-12-401b. (Exhibit 12, p. 1). Plaintiff was found not guilty, due to her participating in a religious holiday on the first missed day and for filing a PREA complaint on the second day; the disciplinary report was dismissed. (Exhibit 12, p. 4).

On December 21, 2023, Plaintiff filed a grievance alleging the disciplinary report and her firing from a porter job were both retaliation by Ms. Hull-Viera for Plaintiff filing a PREA complaint. (Exhibit 10, p. 12). Following staff responses, TCF's Warden responded to Plaintiff's grievance directly on February 20, 2024, and provided Plaintiff with her investigatory finding that she was not fired due to retaliation. (Exhibit 10, p. 14). Plaintiff submitted a similar grievance on December 15, 2023, claiming that her unit team was retaliating against her and that TCF's PREA Coordinator was not assisting her. (Exhibit 10, p. 15). Ms. Chavez responded to this complaint with a summary of Plaintiff's consistent lack of cooperation with Ms. Watts. (Exhibit 10, p. 16). Plaintiff did not appeal any claim or grievance alleging the disciplinary report was a result of PREA retaliation to the Secretary. (Exhibit 7, ¶ 8).

TCF's PREA Compliance Manager, Valerie Watts, followed federal PREA Standards and attempted to meet with Plaintiff 30, 60, and 90 days after Plaintiff filed her PREA complaint. (Exhibit 14, ¶ 6-8). Plaintiff refused to meet with Ms. Watts for two of those meetings. (Exhibit 14, ¶ 7 & 8). The purpose of the meetings is to gain additional details of how the resident is being treated following the complaint and to ensure the resident is not facing retaliation from other residents or staff. (Exhibit

14, ¶ 3). Ms. Watts takes the information, if any is provided, and considers ways to address any reported issues to prevent future harm to the resident. (Exhibit 14, ¶ 4).

### C.     Count III.

Plaintiff claims that TCF has denied her the ability to register as Native American and that she must attend smudging under IMPP 10-110D. (Doc. 12, p. 17). The TCF Chaplain has not encountered any complaint or grievance regarding a resident's ability to choose any religious affiliation they prefer upon intake to TCF aside from Plaintiff's claim. (Exhibit 13, ¶ 3). IMPP 10-110D, which regulates religious services for all KDOC facilities, Section III states that residents are not allowed to fully engage in the practices of other religions that they are not formally affiliated to. (Exhibit 15, p. 2). Plaintiff must be formally affiliated to a faith that engages in church services to attend and participate in church services.

Plaintiff claims she was told she could not attend church services if recognized as Jewish and that she was forced to choose one religion and change her religious affiliation. (Doc. 12, p. 17). Plaintiff was not denied the ability to attend Jewish church services; because Plaintiff was the only Jewish resident in her building at that time, there were no Jewish church services available. (Exhibit 13, ¶ 4). On September 6, 2023, Plaintiff submitted a religious grievance in which she requests permission to attend Christian/Protestant church services while still affiliated as Jewish. (Exhibit 10, p. 17).

Mr. Waller notified Plaintiff that she would need to change her affiliation, per KDOC policy, to attend and participate in Christian/Protestant church services. (Exhibit 10, p. 18[1]). On October 2, 2023, Plaintiff voluntarily requested a Change of Religion Request Form to switch her affiliation from Jewish to Christian/Protestant. (Exhibit 16, p. 2). Residents are not able to choose more than

---

[1] Mr. Waller mistakenly refers to a General Order ("G.O.") in his grievance response on page 18 of Exhibit 13, when he meant IMPP 10-110D. The incorrect reference notwithstanding, his response is accurate.

one religious affiliation per IMPP 10-110D, Section IV. (Exhibit 15, p. 7). Residents are always free to practice as many religions as they prefer in an individual capacity.

Plaintiff claims that Darcie Holthaus told her the following quote: "We do not recognize Jewish where you are housed and to take it up with Colorado." (Doc. 12, p. 17). Ms. Holthaus denies having told this to Plaintiff. (Exhibit 7, ¶ 5). The misquoted statement likely arose from Ms. Chavez's response to a grievance Plaintiff submitted on September 7, 2023. (Exhibit 10, p. 19). Ms. Chavez stated: "According to your religious affiliation's documentation, you are listed as Jewish. We currently do not have any volunteers to lead Jewish services, and you are the only resident on the I/J side of the facility to list Jewish as their religious affiliation. Our policy IMPP 10-110D states that in order to schedule a group service there must be 2 or more with approval from the Chaplain." (Exhibit 10, p. 20).

Plaintiff also claims that the TCF Chaplain told her that her religious freedoms were being limited by TCF leadership and that male residents had greater freedom. (Doc. 12, p. 18). TCF's Chaplain, Jesse Waller, denies having told Plaintiff that her religious freedoms were being limited by any person or entity at TCF. (Exhibit 13, ¶ 5). Mr. Waller also denies having told Plaintiff that male residents have any greater freedom to pursue religious interests than female residents. (Exhibit 13, ¶ 6). Plaintiff is, in fact, the one who has alleged that female residents are treated differently than male residents for religious services and not Mr. Waller. (Exhibit 10, p. 22). All residents have equal access and involvement in religious services regardless of their sex or gender. (Exhibit 13, ¶ 6).

### D.    Count IV.

Plaintiff claims that she was denied access to her TCF tablet as a form of retaliation for filing a PREA complaint and for filing grievances alleging TCF policy violations. (Doc. 12, p. 20). Plaintiff also claims that she was issued a disciplinary report for mailing out gifts as a form of retaliation and

as an attempt to prevent her from filing more electronic grievances. (Doc. 12, p. 20).

Plaintiff's tablet was confiscated on February 1, 2024, after the TCF's Enforcement, Apprehensions, and Investigations ("EAI") unit became aware that she had sold a pair of her sweatpants on eBay through a third party for $200. (Exhibit 12, p. 7). Plaintiff's tablet was withheld from her during the investigation and after she was found guilty of violating K.A.R. 44-12-209 for selling and mailing the sweatpants. (Exhibit 12, p. 7 & 8). Violation of K.A.R. 44-12-209 is a Class III offense. (Exhibit 17).

Plaintiff regained electronic access to the tablet on May 1, 2024, but with electronic restrictions. (Exhibit 5, ¶ 11). Plaintiff was not denied access to her tablet or issued a disciplinary report as a form of retaliation, but because she violated KDOC policy. (Exhibit 5, ¶ 12). Plaintiff did not appeal any claim or grievance alleging her tablet access was removed due to filing a PREA complaint, as a form of retaliation, to the Secretary. (Exhibit 7, ¶ 8).

Plaintiff claims she was denied access to evidence during her disciplinary hearing, that the presiding officer denied her due process, and that the officer threatened her. (Doc. 12, p. 24). Ms. Van Dyke denies having threatened Plaintiff at any time. (Exhibit 18, ¶ 4). Plaintiff was afforded the opportunity to address the evidence and charge against her during the hearing. (Exhibit 18, ¶ 5). In her testimony, Plaintiff admitted to performing the actions of providing her sweatpants to a third party so they could be sold for financial gain; this was sufficient to find her guilty. (Exhibit 18, ¶ 6).

Ms. Van Dyke denies having planned or written a punishment before the hearing began. (Exhibit 18, ¶ 7). The punishment Plaintiff received was not excessive or for a prolonged period of time that would be unusual for a Class III violation. (Exhibit 18, ¶ 8). Additionally, Plaintiff was not denied access to the grievance process after being found guilty and had access to physical forms of religious materials and legal resources, including resources in TCF's library, while she was restricted

from tablet use. (Exhibit 18, ¶ 9 & 10).

Plaintiff claims her cell underwent lengthy room searches as a form of retaliation and that officers conducting the searches read through her legal mail. (Doc. 12, p. 24). Plaintiff has not filed a grievance or complaint alleging lengthy room searches are being performed out of retaliation. She has also not submitted a complaint to TCF staff alleging her legal mail has been read during a cell search. (Exhibit 5, ¶ 13). According to Ms. Hull-Viera, the only lengthy cell search potentially applicable would not have been a search, but a pack-out of Plaintiff's property when she was placed on Crisis Level. (Exhibit 5, ¶ 14). No evidence has been found supporting Plaintiff's claim that her legal mail was read during this movement or other staff entries to her cell.

## CONCLUSION

Plaintiff's claim that she has been prevented from adding her attorney to her Approved Calling List is false, as is Plaintiff's claim that Ms. Chavez denied such a request. Plaintiff has not submitted the proper form to add her attorney as clearly outlined in IMPP 10-111D, Section III. No evidence has been found that Mr. Hartpence has confiscated any of Plaintiff's mail, legal or not, or has tampered with her outgoing or incoming mail.

Plaintiff claims that she has been exposed to mold, vermin, extreme temperature changes, and toxins due to inadequate ventilation; TCF's Maintenance Department has thoroughly investigated these claims and has not been able to substantiate them. Plaintiff's claim that her food is improperly prepared and not nutritionally compliant is not supported by evidence. Her claim that her food is sometimes cold is accurate and a temporary result of TCF's kitchen renovation. Plaintiff's claim that she received a disciplinary action as a form of retaliation for filing a PREA complaint has been investigated at all levels of the TCF hierarchy and by KDOC central office, with no findings to substantiate retaliation was a factor.

13

Plaintiff's claims that she was prevented from religiously affiliating herself as Native American is incorrect. Plaintiff voluntarily chose to be registered as Jewish upon her arrival to TCF; Plaintiff, again at her discretion, chose to change her affiliation to Christian/Protestant to attend Christian church services. Plaintiff's allegations of antisemitism were not found to be substantiated. Ms. Holthaus and Mr. Waller both deny what Plaintiff has claimed they told her and have provided documentation in the form of their grievance responses to Plaintiff. Plaintiff is correct in that she cannot have multiple religious affiliations, but she was not forced to change her religious affiliation.

Plaintiff's claim that her tablet was taken from her as a form of retaliation is erroneous. Her tablet was removed from her possession after she was found abusing the electronic messaging system and selling her clothing via a third party on eBay. The resulting disciplinary action further restricted her ability to use certain features of the tablet. No evidence was found to support Plaintiff's claim that she underwent lengthy cell searches or that her legal mail was read during said searches.

Finally, Plaintiff failed to exhaust administrative remedies for most of her allegations. She did not appeal her grievances or claims regarding legal mail being confiscated or tampered with, deficiencies with TCF's law library, exposure to sewage backups, a lack of hot water, mold, contaminated drinking water, inadequate ventilation in her cell, denied access to cleaning supplies, leaking windows, vermin, extreme temperature fluctuations, inadequate food preparations or nutrition, claiming PREA retaliation for losing her job, electronic tablet access, or undergoing lengthy room searches.

Respectfully submitted,


*/s/ Natasha M. Carter*
Natasha M. Carter, KS No. 26074
Chief Legal Counsel
Kansas Department of Corrections
714 SW Jackson St, Suite 300
Topeka, KS 66603
Tel: (785) 506-7615
Email: natasha.carter@ks.gov


CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Report in "Martinez VS Aaron" Investigation was placed in the US mail this 12th day of July 2024, to:

Michelle Lamb, #17636
Topeka Correctional Facility
815 S.E. Rice Road
Topeka, KS 66607
Plaintiff *pro se*


*/s/ Natasha M. Carter*
Natasha M. Carter

15

## **EXHIBIT LIST**

1.      KASPER Profile for Letecia Stauch
2.      Declaration of Holly Chavez
3.      Internal Management Policy and Procedure 10-111D
4.      Declaration of Brandon Kennedy
5.      Declaration of Linda Hull-Viera
6.      Declaration of Dona Hook
7.      Declaration of Darcie Holthaus
8.      Declaration of Dalton Hartpence
9.      Declaration of Alfred Schimmel
10.     Plaintiff's Relevant Grievances & Facility Responses
11.     Plaintiff's Legal Mail Log
12.     Plaintiff's Relevant Disciplinary Record
13.     Declaration of Valerie Watts
14.     Declaration of Jesse Waller
15.     Internal Management Policy and Procedure 10-110D
16.     Plaintiff's Religious Affiliation Forms
17.     Kansas Administrative Regulation 44-12-2093
18.     Declaration of Tory Van Dyke
19.     Facility Health and Safety Reports
20.     Application for Registration as Registered Attorney