## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LETECIA STAUCH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )　　**Case No. 24-3027-HLT-BGS** |
| | ) |
| **JEFF ZMUDA,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

### <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Defendants Jeff Zmuda, Darcie Holthaus, Dona Hook, Holly Chavez, Dalton Hartpence,

and (fnu) Dietrick ("Defendants"), respectfully request, through Assistant Attorney General

Matthew L. Shoger, that this Court grant them summary judgment under Fed. R. Civ. P. 56.

Defendants attach three exhibits, outlined in the table below, and state the following in support.

### INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | Declaration of Darcie Holthaus |
| B | Declaration of Holly Chavez |
| C | Declaration of Denise Sisco |
| D | Plaintiff's Answers to Defendants' First Set of Interrogatories to Plaintiff |
| E | Document produced in response to Defendants' First Set of Requests for Production to Plaintiff – Protest of Mail Censorship dated July 2, 2024 |
| F | Transcript of Deposition of Plaintiff taken on October 8, 2025 |
| G | Transcript of Deposition of Plaintiff taken on November 26, 2025 |
| H | Selected court records from related District of Colorado case 1:22-cv-02467 |
| I | Selected court records from related Shawnee County case SN-2024-CV-254 |
| J | Plaintiff's Responses to Defendants' First Set of Requests for Admission to Plaintiff |
| K | IMPP 10-108D (all versions in effect since November 4, 2022) |
| L | IMPP 10-110D (all versions in effect since January 30, 2018) |
| M | IMPP 12-139D (all versions in effect since September 6, 2023) |

**NATURE OF THE CASE**

Plaintiff Letecia Stauch alleges that while she was incarcerated at Topeka Correctional Facility (TCF) starting in August 2023 (*see, e.g.,* Doc. 12 at 17) her constitutional rights were violated in various ways. In Count I, she alleges under the First Amendment that her legal mail was tampered with by Defendants Chavez, Hook, Zmuda, and Hartpence. (Doc. 12 at 4, 7-9.) In Count II, she alleges under the Eighth Amendment that Defendant Dietrick sexually assaulted her and that Defendants Chavez, Hook, and Zmuda failed to act on the alleged abuse and forced her to stay around her alleged abuser. (Doc. 12 at 4, 13-14.) In Count III, she alleges under the First Amendment that her free-exercise rights were violated by Defendants Chavez, Holthaus, Hook, and Zmuda. (Doc. 12 at 5, 17-20; *see also* Doc. 27 at 30.) Although Stauch made other claims in her Complaint, the Court dismissed Stauch's other claims on screening under the Prison Litigation Reform Act (PLRA). (Doc. 13 at 11; Doc. 29 at 20.)

Stauch filed this lawsuit on February 16, 2024 (Doc. 1), and filed her Amended Complaint ("Complaint") on March 26, 2024 (Doc. 12). A *Martinez* Report was filed on July 12, 2024. (Doc. 24.) The Court finished screening the Complaint under the PLRA on October 31, 2024. (Doc. 29 at 20.) Stauch seeks compensatory damages and injunctive relief. (Doc. 12 at 6.)

On May 20, 2025, the Court dismissed Stauch's claims for compensatory damages except for those under Count II in an individual capacity. (Doc. 48 at 5.) And the Court held that injunctive relief would be appropriate only for the official-capacity claims. (Doc. 48 at 2 n.2.) As the Court summarized: "The claims remaining in this case are those for (1) prospective injunctive relief against Defendants in their official capacities in counts 1, 2, and 3; and (2) compensatory damages against Defendants in their personal capacities in count 2." (Doc. 48 at 5.) The Court denied without prejudice Defendants' exhaustion defense as well as Defendants' defense under Count I based on records of Plaintiff's mail correspondence. But the Court pointed

out that Defendants may still raise these arguments "with a Rule 56 motion for summary judgment along with the notice Local Rule 56.1(d) requires." (*See* Doc. 48 at 5 & n.3.) Defendants now file their Motion for Summary Judgment.

The Court should dismiss the claims for injunctive relief due to lack of subject-matter jurisdiction because Plaintiff's transfer to an out-of-state facility renders those claims moot. The Court should grant the Defendants summary judgment on all remaining counts due to failure to exhaust administrative remedies. Alternatively, the Court should grant Defendants summary judgment on Plaintiff's free-exercise claim due to a neutral and generally applicable policy and lack of personal participation. And the Court should grant Defendants summary judgment on the interference-with-legal-mail claim because the District of Colorado's orders were mailed to the wrong address, and no legal-mail claim was .

### STATEMENT OF MATERIAL FACTS AS TO WHICH
### NO GENUINE ISSUE EXISTS

1.  Stauch is currently incarcerated. (Doc. 12 at 1-2; Doc. 51; Docket (showing Stauch's address according to the record for purposes of service).)

2.  Stauch arrived at Topeka Correctional Facility (TCF) on August 14, 2023, through the Interstate Compact. (Doc. 24-1 at 1-2; *see also* Doc. 12 at 2, 17; Doc. 79 at 2 (stipulated fact i).)[1]

3.  In May 2025, Stauch was transferred to a Colorado correctional facility managed by the Colorado Department of Corrections (CDOC). (Doc. 51; Doc. 51-1; Doc. 79 at 2 (stipulated fact i), 3 (stipulated fact xv).)

---

[1] The court can take judicial notice of the location history for Stauch in the Kansas Adult Supervised Population Electronic Repository (KASPER) report contained in Doc. 24-1. *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (citing *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) and *United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008)).

### *Interference with Legal Mail*

4. Stauch's interference-with-legal-mail claim is based on the following alleged events:

   a. Stauch alleges that Defendant Hartpence failed to allow her to mail items to the Shawnee County District Court for a habeas case in November 2023. (Exhibit D at 1, 3; Exhibit F at 69:2-12; Exhibit G at 15:12-16:16, 39:21-41:8, 41:14-45:23.)

   b. Stauch alleges that Defendant Hartpence and another staff member failed to allow her to mail items to the CDOC Interstate Compact Office in November 2023. (Exhibit D at 1, 3; Exhibit F at 71:2-13; Exhibit G at 39:21-40:7, 44:21-45:23.)

   c. Stauch alleges that her legal mail from the United States District Court for the District of Colorado was refused by unspecified Kansas Department of Corrections (KDOC) staff in December 2023. (Doc. 12 at 8; Doc. 28 at 2; Doc. 28-1 at 1-2; Exhibit D at 1; Exhibit F at 62:10-16, 63:13-64:3, 68:17-69:1; Exhibit G at 35:1-15, 37:10-18, 39:21-40:21, 48:15-16; *see also* Doc. 29 at 5-6.)

   d. Stauch alleges that KDOC refused to provide her with an unknown incoming mail item on March 17, 2024, because of the weight limit. (Exhibit G at 35:16-36:16, 48:21-24.)

   e. Stauch alleges that a mailing from family members in July 2024 (not from a court or from an attorney) containing printouts of PACER documents was refused due to being over weight limits. (Doc. 28-1 at 23; Exhibit D at 1; Exhibit E at 2; Exhibit F at 73:14-16.)

   f. Stauch alleges that Defendant Hartpence and another staff member failed to allow her to mail a letter on July 22, 2024, to Darcie Holthaus in KDOC headquarters with documents that requested her removal from KDOC. (Exhibit D at 1, 3; Exhibit G at 15:12-16:16, 46:8-21, 47:15-20.)

g. Stauch alleges that her legal mail was often delayed by two weeks or sometimes more. (Exhibit D at 1; Exhibit F at 70:7-11; Exhibit G 49:4-21.) No admissible evidence shows that this delay was caused by the Defendants or any KDOC staff.

h. Stauch alleges that Defendants Chavez, Hook, and Zmuda, failed to resolve issues with interference with legal mail when Stauch raised them through the grievance process or reminded them about the grievances. (Exhibit D at 3-4; Exhibit G at 17:23-18:16, 26:12-31:11.)

5. Stauch alleges that only two cases were affected by interference with her legal mail: the District of Colorado case and the Kansas habeas case. (Exhibit G at 39:21-41:8.)

*District of Colorado case*

6. In *Stauch v. El Paso Cnty.*, No. 1:22-cv-02467, 2024 WL 3722959, at \*2 (D. Colo. Aug. 8, 2024), the District of Colorado ordered its clerk to mail an order to Stauch at TCF. (Exhibit H at 8 (Doc. 61 (saying to mail Doc. 55)).)

7. The court records show plainly that the clerk failed to do so and *actually mailed the order to the wrong address*. (Exhibit H at 8 (Docs. 61-63). *Compare* Exhibit H at 10-13 *with* Exhibit H at 17 (showing the end of a P.O. box number ending in 5). *See also* Exhibit H at 14-16 (providing TCF's address, not including any numbers that end in 5).)

8. The order was not mailed to the TCF address until *after* the incorrectly addressed item had been returned as undeliverable. (Exhibit H at 8 (Docs. 61-64).)

9. The docket for that case does not contain any indication that the *correctly* mailed item was ever returned undeliverable. (*See* Exhibit H at 8-9.)

*Shawnee County habeas case*

10. Stauch was able to successfully file the Kansas habeas case, at least at a later date. (Exhibit G at 42:18-43:1.)

11. Stauch filed a Kansas habeas case numbered SN-2024-CV-254 on April 3, 2024. (Exhibit I at 1.)

12. That habeas case was dismissed for lack of jurisdiction on May 1, 2024. The court said the proper court would be a Colorado court. (Exhibit I at 13-15.)

13. Stauch appealed to the Kansas Court of Appeals, appeal number 128,175, but her appeal was dismissed on May 29, 2025, for failure to file a brief by the deadline set by the court. (Exhibit I at 17-18.)

### *Legal Mail*

14. Regulations for the KDOC provide that "Any incoming or outgoing mail other than legal, official, or privileged mail may be inspected or read at any time." K.A.R. 44-12-601(b)(6).

15. Regulations for the KDOC define legal mail as: "mail affecting the inmate's right of access to the courts or legal counsel. This term shall be limited to letters between the inmate and any lawyer, a judge, a clerk of a court, or any intern or employee of a lawyer or law firm, legal clinic, or legal services organization, including legal services for prisoners." K.A.R. 44-12-601(a)(1)(A); (*see also* Exhibit M at 1, 6 (policy).)

16. Regulations for the KDOC also provide a weight limit for non-legal mail: "an inmate shall be permitted to receive printed material, including newspaper and magazine clippings, if the material is included as part of a first-class letter that does not exceed one ounce in total weight." K.A.R. 44-12-601(g)(1).

### *Sexual Assault*

17. Plaintiff alleges that Defendant Dietrick groped her in October 2023 while she was in the shower at TCF. So if the alleged sexual assault occurred, it would have occurred in October 2023. (Exhibit J at ¶¶ 1-2; Doc. 79 at 3 (stipulation to the admissibility of Exhibit J); *see also* Doc. 12 at 13.)

*Religious Programs*

18. Stauch's free-exercise claim is based on the following alleged events:

    a.  Stauch alleges that she could not attend services other than smudging if she identified as Native American. (Doc. 12 at 17, 19; Exhibit F at 48:7-19, 49:7-19.)

    b.  Stauch alleges that she could not attend Jewish religious services. (Doc. 12 at 17; Doc. 28 at 6; Doc. 79 at 4; Exhibit F at 55:15-56:3.)

    c.  Stauch alleges that she could not attend Protestant church services without switching her religious affiliation from Jewish to Protestant. (Doc. 12 at 17-19; Doc. 28 at 6; Doc. 79 at 4; Exhibit F at 60:2-15.)

    d.  Stauch alleges that she could not receive a kosher diet. (Doc. 12 at 19; Exhibit F at 54:15-55:9; 56:16-57:20.)

19. KDOC policy requires each resident to complete a Religious Information Form upon admission to departmental custody. (Exhibit L at 7 (¶ IV(A)), 27 (¶ IV(A)); Doc. 24-15 at 7 (same); *see also* Exhibit K at 1-2, 6 (providing for religious programs).)

20. Stauch went through the intake process at TCF on August 14, 2023, and declared her religious affiliation as Judaism. (Doc. 24-16 at 1.)

21. Stauch personally checked Jewish on the Religious Affiliation Form. (Exhibit F at 51:5-10; *see also* Doc. 12 at 17 (saying "I was forced to change it at intake" from Native American to Messianic Jewish).)

22. There were no Jewish services at TCF in maximum security from August 2023 to April 2025. (Doc. 79 at 3 (stipulated fact xiv).)

23. Stauch was not denied the ability to attend Jewish church services; because she was the only Jewish resident in her building at that time, there was no Jewish church service available. (Doc. 24-13 at ¶ 4.)

24. Stauch states that Defendant Chavez told her that Jewish services were not provided in I and J complex and that Stauch would need to practice in her cell. (Exhibit F at 55:15-56:3.)

25. No admissible evidence shows that Defendants Zmuda, Hook, Chavez and Holthaus were individually involved in any alleged denial of her religious practice aside from responding to grievances or similar informal requests. *See* Fed. R. Civ. P. 56(c)(1)(B).

26. Residents may request a change of religious affiliation by submitting a Change of Religion Request form. (Exhibit L at 7 (¶ IV(B)), 27 (¶ IV(B)); Doc. 24-15 at 7 (same).)

27. Under KDOC policy, "Residents shall be permitted the opportunity to learn about other religious affiliations but shall not be allowed to fully engage in the practices of other religions except when a change of affiliations is requested." (Exhibit L at 2 (¶ III(A)), 22 (¶ III(A)); Doc. 24-15 at 2 (same).)

28. Stauch filed a Change of Religion Request to change her religion to Christian/Protestant on October 2, 2023. (Doc. 24-16 at 2.)

29. Stauch claims that the Chaplain Jesse Waller brought her the form and she filled it out. (Exhibit F at 60:7-15; *see also* Doc. 24-13 at ¶ 1.)

30. Stauch claims that she was forced to change her religion by Jesse Waller. (Exhibit F at 60:2-4; Doc. 24-16 at 2.)

31. Stauch wrote on her Change of Religion form: "Facility is requiring other methods for inmates who are Jewish to attend church. This is an act of anti-semitism and in order for me to attend I had to abandon my Jewish Christian affiliation to just Christian. This is another form of documentation as I am collecting data to file a US 1983 on TCF. Instead of housing [(indecipherable)] appropriately or treating all inmates the same, they engage in 1st & 8th & 14th amendment violations. They are aware and competent." (Doc. 24-16 at 2.)

*Administrative Remedies*

32. The Kansas Department of Corrections (KDOC) has supplemented its paper grievance system with the option of using an electronic grievance system. (Exhibit A at ¶¶ 4-5; Exhibit B at ¶¶ 4-5.)

33. For general grievances filed in the electronic grievance system, an informal-resolution attempt comes first, then grievances go through four levels, with Level 4 grievances representing an appeal to the Secretary. (*See* Exhibit B at ¶¶ 6-28; *see also* Doc. 24-10 at 12-14; Exhibit B at 10-20.)

34. For emergency grievances filed in the electronic grievance system, grievances go through two levels, with Level 2 emergency grievances representing an appeal to the Secretary. (*See* Exhibit B at ¶¶ 29-30.)

35. Appeals can be made using the paper grievance system even if the grievance started as an electronic grievance. (Exhibit B at ¶¶ 18-22, 24-26, 29-30, pg. 9; *see also* Exhibit A at 60-88 (examples of Stauch appealing electronic grievances via paper).)

*October 2023 Letter*

36. In October 2023, Stauch sent an informal letter directly to the Secretary of Corrections to raise various matters of concern. (Exhibit A at ¶¶ 6-9, pgs. 7-21.)

37. The letter attached what appears to be a simulated court filing that included mention of religious issues, including lack of Jewish services and inability to attend Christian services. It also mentioned the importance of a kosher diet. (Exhibit A at 11, 16-17.)

38. But this informal letter and its unusual attachment did not follow the formal grievance procedures of KDOC. (*See* Exhibit A at 7.)

*December 2023 Letter*

39. In December 2023, the Secretary of Corrections' designee responded to an informal letter

that Stauch had sent directly to the Secretary of Corrections, attempting to raise multiple matters of concern, including "a diet based on religious proscriptions." (Exhibit A at ¶¶ 10-11, pgs. 22.)

*Grievance 20240029*

40. In January 2024, Stauch appealed paper grievance number 20240029 to the Secretary of Corrections. (Exhibit A at ¶¶ 12-15, pgs. 23-33.)

41. This grievance complained about the Interstate Corrections Compact, that she was being held in Kansas, and – without any elaboration – that her "civil liberties" were being denied. (Exhibit A at 29.)

42. She failed to attach documentation of her informal-resolution attempt. (Exhibit A at 27-28.)

*Combined Grievance Appeal*

43. In February 2024, Stauch filed a combined appeal of grievance and informal request numbers 403626461, 381794331, 358380041, 358227081, 411181831, 407581871, 409500561, and 405397891 to the Secretary of Corrections. (Exhibit A at ¶¶ 16-19, pgs. 34-59.)

44. Because the lower grievance steps had not been completed, the Secretary forwarded the appeal to the TCF warden for the facility's response to each of the related grievances. (Exhibit A at ¶¶ 16-18, pg. 34.)

45. A technical issue with the electronic grievance system at TCF during this timeframe had resulted in a backlog of grievances and appeals that had not been responded to. (Exhibit B at ¶¶ 31-36.)

46. Due to Stauch being suspended from electronic access at this time, all further grievance correspondence was done by paper rather than electronically. (*See* Exhibit B at ¶¶ 18-20, pg. 9.)

*Grievance 403626461*

47. The warden responded to grievance number 403626461 by paper letter on February 20,

10

2024. (Exhibit B at ¶¶ 40-41, pgs. 26-29.)

48. The grievance complained about TCF General Order 15-108 and what it says about curfew and access to the day room. (Exhibit B at 26.)

49. After receiving a response from the warden, Stauch did re-appeal the grievance to the Secretary. (Exhibit A at ¶¶ 32-35, pgs. 81-88.))

*Grievance 381794331*

50. Grievance number 381794331 was originally submitted on October 30, 2023. (Exhibit A at pg. 80.)

51. The grievance as submitted did not make allegations of any inappropriate physical contact by Officer Dietrick. (Exhibit A at 79-80.)

52. Although the grievance stated, "Emotionally and Physically abused in facility," it clarified that "physical" did not mean physical contact: "It is now physical cause on purpose I am being put around Dietrick and I am being sexually harassed in the shower by him." (Exhibit A at pg. 79-80.)

53. The grievance was sent to KDOC's Enforcement, Apprehensions, and Investigations (EAI) unit, and EAI investigated the matter. (Exhibit C at ¶¶ 5-6.)

54. EAI interviewed Stauch on November 2, 2023. In that interview, Stauch stated she would not provide any additional information because she had elected to pursue the matter through a civil lawsuit. (Exhibit C at ¶¶ 6-7, pgs. 6-14.)

55. However, Stauch later submitted a request to EAI on December 2, 2023. EAI opened a PREA investigation numbered TCF-PR-23-41 on or around December 2, 2023, into Stauch's allegations of "sexual talks from Officer Dietrick." (Exhibit C at ¶¶ 9-12, pgs. 16-19.)

56. EAI interviewed Stauch as part of this investigation on December 4, 2023. (Exhibit C at ¶ 13.)

11

57. In that interview, Stauch was asked the following regarding Officer Dietrick: "you're sayin' that he's limited these actions to just comments; correct?" (Exhibit C at 27, ¶ 13.)

58. Stauch confirmed by saying, "Correct." (Exhibit C at 27, ¶ 13.)

59. Stauch was then asked, "He has never touched you?" (Exhibit C at 28, ¶ 13.)

60. Stauch confirmed by saying, "No." (Exhibit C at 28, ¶ 13.)

61. Stauch did not say at any point in the interview on December 4, 2023, that Officer Dietrick had inappropriately touched her. (*See* Exhibit C at 20-42, ¶ 13.)

62. The investigation numbered TCF-PR-23-41 concluded on December 12, 2023, with an outcome of Unsubstantiated. (Exhibit C at ¶¶ 14-15, pgs. 44-45.)

63. The facility, through Defendant Chavez, responded to grievance number 381794331 by paper letter on February 20, 2024. (Exhibit A at ¶¶ 28-31, pgs. 74-80.)

64. In that response, Chavez referred to the EAI investigation that had been opened on approximately December 4, 2023 – which corresponds to TCF-PR-23-41 – and to its result of "unsubstantiated." (Exhibit A at 78.)

65. After receiving this response from the facility, Stauch did re-appeal the grievance to the Secretary in February or March of 2024. (Exhibit A at ¶¶ 28-31, pgs. 74-80.)

66. Stauch included a new allegation of sexual assault in the appeal that had not been raised in the lower stages of the grievance process. (Exhibit A at 77.)

67. The Secretary of Corrections responded to the grievance on March 8, 2024. (Exhibit A at 74.)

### *Interception of Message*

68. After the conclusion of investigation TCF-PR-23-41, the EAI unit became aware, on December 13, 2023, of a message from Stauch to a person outside the facility in which Stauch stated: "This guard s.exu.ally as.sa.ulted me in the shower." (Exhibit C at ¶¶ 16-17, pg. 46.)

69. Due to that message, EAI launched a new, separate investigation numbered TCF-PR-23-43 on December 13, 2023. The investigation was not opened due to any formal or informal request by Stauch to any KDOC staff for the matter to be investigated. (Exhibit C at ¶ 18.)

70. EAI interviewed Stauch as part of this new investigation on December 13, 2023. (Exhibit C at ¶ 19.)

71. In that interview, Stauch claimed for the first time to EAI that Officer Dietrick had groped her. (Exhibit C at 54-57, ¶ 19.)

72. The investigation numbered TCF-PR-23-43 closed on January 8, 2024, with an outcome of Unsubstantiated. (Exhibit C at ¶¶ 20-21, pg. 87.)

73. Defendant Chavez did not refer to EAI's investigation numbered TCF-PR-23-43 in her response to Stauch's grievance numbered 381794331. (Exhibit A at 78.)

74. No admissible evidence shows that Defendant Chavez or Defendant Holthaus knew of EAI's investigation numbered TCF-PR-23-43 or its outcome when they responded to grievance 381794331. *See* Fed. R. Civ. P. 56(c)(1)(B).

*Grievance 358380041*

75. The facility responded to emergency grievance number 358380041 by paper letter on or around February 21, 2024. (Exhibit B at ¶ 39, pgs. 24-25.)

76. The emergency grievance complained of alleged sexual harassment by Defendant Dietrick, physical abuse by a different staff member (who she said was not an officer), attempts to kill her by a different staff member (who she said was a unit team member), and threats from the Chaplain. (Exhibit B at 24.)

77. After receiving a response from the facility, Stauch did not re-appeal the grievance to the Secretary. (*See* Exhibit A at ¶¶ 36-37.)

13

*Grievance 358227081*

78. The warden responded to emergency grievance number 358227081 by paper letter on March 8, 2024. (Exhibit B at ¶¶ 37-38, pgs. 21-23.)

79. The emergency grievance mentioned preparing to file a suit for "[r]eligious" reasons, including "no Bible." (Exhibit B at pg. 21.)

80. After receiving a response from the warden, Stauch did not re-appeal the grievance to the Secretary. (*See* Exhibit A at ¶¶ 36-37.)

*Informal Requests*

81. Informal request numbers 411181831, 407581871, and 409500561 were not grievances and had been responded to prior to February 2024. (Exhibit B at ¶¶ 44-46, pgs. 33-41.)

*Grievance 408018511*

82. Informal request number 405397891 was turned into grievance number 408018511. Chavez responded to that grievance by paper letter on February 20, 2024. (Exhibit B at ¶¶ 27, 42-43, pgs. 30-32.)

83. The grievance complained about law library resources and access. (Exhibit B at pg. 31.)

84. After receiving Chavez's response, Stauch did not appeal the grievance to the Secretary. (*See* Exhibit A at ¶¶ 36-37.)

*Grievance 404578081*

85. In February 2024, Stauch appealed grievance number 404578081 to the Secretary. (Exhibit A at ¶¶ 20-23, pgs. 60-66.)

86. The grievance complained about PREA-based retaliation by persons other than Defendants. (Exhibit A at 65.)

*Grievance 40517231*

87. In February or March 2024, Stauch appealed grievance number 40517231 to the

Secretary. (Exhibit A at ¶¶ 24-27, pgs. 67-73.)

88. The grievance complained about alleged violations of PREA procedures by persons other than Defendants. (Exhibit A at 72-73.)

*Other Grievances*

89. Stauch did not file any other grievance appeals to the Secretary between the time of her being transferred to TCF in August 2023 (Doc. 12 at 17) and her filing the Amended Complaint in March 2024 (Doc. 12). (Exhibit A at ¶¶ 36-37; *see also* Doc. 24-2 at ¶ 8.)

## ARGUMENTS AND AUTHORITIES

### *Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018). The court views the evidence and draws all reasonable inferences in a light most favorable to the nonmoving party. *Id.* "[W]hile courts must construe pro se pleadings liberally, pro se plaintiffs may not rely on conclusory allegations to overcome their burden." *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Facts must be shown through affidavits, deposition transcripts, or incorporated exhibits. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

> [T]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a genuine issue or dispute of material fact. [citation omitted] To create a genuine issue, the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant.

*Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021).

### *Qualified Immunity Standard*

Qualified immunity protects from civil liability government officials whose actions do not violate clearly established statutory or constitutional rights of which a reasonable person

would have known. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). When a defendant raises the qualified immunity defense, it creates a presumption that the defendant is immune from suit. *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021). To overcome this presumption, the burden shifts to the plaintiff to show (1) the defendant's alleged conduct violated a federal statutory or constitutional right, and (2) that right was clearly established at the time of the alleged violation. *Id.* "The court has discretion to decide which of the two prongs of the qualified-immunity analysis to address first." *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The clearly-established right must be clear from applicable case law, *Colbruno v. Kessler*, 928 F.3d 1155, 1161 (10th Cir. 2019), and must be defined with specificity, *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019).

## I. Stauch's claims for injunctive relief are moot because she is no longer incarcerated in Topeka Correctional Facility (TCF).

"Article III delimits the jurisdiction of federal courts, allowing [them] to consider only actual cases or controversies." *Kan. Jud. Rev. v. Stout,* 562 F.3d 1240, 1245 (10th Cir. 2009). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Off. Eng. v. Arizona,* 520 U.S. 43, 67 (1997).

> In deciding whether a case is moot, the crucial question is whether granting a present determination of the issues offered will have some effect in the real world. When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot.

*Kan. Jud. Rev.,* 562 F.3d at 1246 (citation omitted). "The touchstone of the mootness inquiry is whether the controversy continues to touch the legal relations of parties having adverse legal interests in the outcome of the case." *Wirsching v. Colorado*, 360 F.3d 1191, 1196 (10th Cir. 2004) (quoting *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded on other grounds as recognized in Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th

16

Cir. 2001)). "[T]his legal interest must be more than simply the satisfaction of a declaration that a person was wronged." *Id.* Further, "a plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future." *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1224 (10th Cir. 2009).

Here, Stauch is no longer incarcerated in TCF; she is currently incarcerated in a Colorado correctional facility. (Defendants' Statement of Facts (DSOF) ¶ 3.) Therefore, she cannot "demonstrate a good chance of being likewise injured by the defendant[s] in the future." *Corder*, 566 F.3d at 1224; *see also Jordan v. Sosa,* 654 F.3d 1012, 1028 n.17 (10th Cir. 2011) (stating "where a prisoner is no longer housed at the penal institution having the conditions of confinement that form the basis of his suit, declaratory relief—as well as injunctive relief—is ordinarily not available").

Accordingly, her claims for injunctive relief are moot and should be dismissed for lack of subject-matter jurisdiction. Additionally, because all that remains of Plaintiff's Counts I and III are claims for injunctive relief (Doc. 48 at 5), Counts I and III are now moot. So Counts I and III should be dismissed in their entirety for lack of subject-matter jurisdiction.

## II.   Summary judgment is appropriate because Stauch failed to exhaust her administrative remedies under the PLRA.

### A. Exhaustion of administrative remedies is mandatory under the PLRA.

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out

for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Bock*, 549 U.S. at 218).

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). "The issue of Plaintiff's failure to exhaust [her] available administrative remedies before filing [her] lawsuit must be determined before reaching the merits of [her] lawsuit." *See Bateast v. Orunsolu*, No. 22-3093-JWL, 2023 WL 3072669, at *5 (D. Kan. Apr. 25, 2023) (citing *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010)).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15-101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and . . . actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, this regulation applies to Stauch's § 1983 claim because her Complaint involves the alleged actions of KDOC employees. *See Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden; and (4) appeal to the secretary of corrections. *Lindsey*, 2021 WL 483855, at *2; K.A.R. §§ 44-15-101(b), (d), -102(a)-(c). At step two, the

18

inmate must include documentation of the informal-resolution attempt. *See* K.A.R. 44-15-101(b), -102(a)(1). And step two must occur within 15 days of discovery of the issue, not counting weekends or holidays. *See* K.A.R. § 44-15-101b. If the inmate does not receive a response at steps two or three within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey*, 2021 WL 483855, at *3; K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1).

**B. Stauch failed to appeal any grievances regarding her current claims to the Secretary of Corrections.**

Stauch is currently incarcerated (Defendants' Statement of Facts (DSOF) ¶ 1), and she brings conditions-of-confinement claims under § 1983, so the PLRA's exhaustion requirement applies. *See* 42 U.S.C. § 1997e(a). In DSOF ¶¶ 32-89, Defendants have outlined Stauch's grievance appeals to the Secretary of Corrections from her arrival at TCF in August 2023 to her filing the Amended Complaint in March 2024. Defendants address each of these below.

*1. Grievances about Sexual Harassment*

Regarding Count II, Stauch never filed a formal grievance about the alleged sexual assault by Officer Dietrick and appealed it through the proper steps to the highest level. Stauch complained in grievance number 381794331 about alleged sexual *harassment* by Officer Dietrick. (DSOF ¶¶ 43-46, 50-52.) Stauch made clear in the grievance itself and in follow-up conversations that she was referring to *comments* by Dietrick and was *not* alleging that Dietrick had *touched* her. (DSOF ¶¶ 51-64.) Accordingly, "the substantive discrepancy between [the] grievance and [the civil] claim casts doubt on the fact that the prison was on notice" of her allegation of sexual assault as a result of her grievance. *See Toenniges v. Ga. Dep't of Corr.*, 600 F. App'x 645, 649 (11th Cir. 2015). Sexual assault is a considerably different allegation. It involves a physical action as opposed to verbal words. And sexual assault is severe enough to

constitute a crime (sexual battery) while sexual harassment does not generally constitute a crime. *See* K.S.A. 21-5505. Grievance number 381794331 does not allege sexual assault, and Stauch even clarified in the grievance and in follow-up conversations that she was *not* alleging sexual assault. So the grievance did not provide proper notice through all steps of the formal grievance process of her current Count-II sexual-assault claim.

Although Stauch later changed her story in a separate EAI investigation – which was unrelated to the grievance process and was not initiated by her – no admissible evidence shows that Defendant Chavez knew about that separate investigation or its outcome when she responded to grievance number 381794331. (*Compare* DSOF ¶ 64 (referring to EAI investigation TCF-PR-23-41 in a grievance response) to DSOF ¶¶ 73-74 (no reference to EAI investigation TCF-PR-23-43 and no evidence that Chavez knew about it or its outcome).) Stauch also added an allegation of sexual assault in her appeal to the Secretary (DSOF ¶ 66), but she did not allege sexual assault at the lower levels of the grievance process. So the grievance did not provide proper notice through all steps of the formal grievance process of her current Count-II sexual-assault claim.

Stauch also complained in grievance number 358380041 about alleged sexual harassment by Defendant Dietrick. (DSOF ¶¶ 43-46, 75-76.) After receiving a response from the facility, Stauch did not re-appeal this grievance to the Secretary. (DSOF ¶ 77.) So this grievance was not fully exhausted through all levels of the formal grievance process. And, similarly to grievance number 381794331, this grievance does not allege sexual assault in the shower, so it did not provide proper notice through the formal grievance process of her current Count-II sexual-assault claim.

2. *Allegations Following the Filing of the Complaint*

Stauch alleges that some instances of interference with legal mail occurred after the filing

20

of the Complaint on February 16, 2024 (Doc. 1), and Amended Complaint on March 26, 2024 (Doc. 12). Specifically, Stauch alleges that in July 2024 she was refused a mailing of PACER documents from family members and that she was not allowed to mail a letter to Darcie Holthaus. (DSOF ¶¶ 4(e)-(f).) So Stauch did not exhaust administrative remedies regarding those allegations prior to filing suit. Additionally, as further discussed below, none of the grievances that Stauch appealed to the Secretary addressed interference with legal mail.

### 3. Other Grievances

The October 2023 letter included mention of religious issues, but this informal letter and its attachment did not follow the formal grievance procedures of KDOC. (DSOF ¶¶ 36-38.) So it did not provide proper notice through the formal grievance process of her current Count-III free-exercise claims.

In December 2023, the Secretary of Corrections' designee responded to an informal letter that Stauch had sent directly to the Secretary of Corrections, attempting to raise multiple matters of concern, including "a diet based on religious proscriptions." (DSOF ¶ 39.) But this informal letter did not follow the formal grievance procedures of KDOC. So it did not provide proper notice through the formal grievance process of the portion of her current Count-III free-exercise claim about an alleged lack of a kosher diet. And it is not related to any of Stauch's other current claims.

Grievance number 20240029 complained about the Interstate Corrections Compact, that she was being held in Kansas, and – without any elaboration – that her "civil liberties" were being denied. (DSOF ¶¶ 40-41.) It does not relate to any of Stauch's current claims. And she failed to attach documentation of her informal-resolution attempt, so this grievance was not properly exhausted through all levels of the formal grievance process. (DSOF ¶ 42.)

Grievance number 403626461 complained about a TCF General Order and what it says

21

about curfew and access to the day room. (DSOF ¶¶ 43-49). It does not relate to any of Stauch's current claims.

Grievance number 358227081 mentioned preparing to file a suit for "[r]eligious" reasons, including "no Bible." (DSOF ¶¶ 43-46, 78-79.) After receiving a response from the warden, Stauch did not re-appeal the grievance to the Secretary. (DSOF ¶ 80.) So this grievance was not fully exhausted through all levels of the formal grievance process. Additionally, it only vaguely alludes to religious matters and did not provide proper notice through the formal grievance process of her current Count-III free-exercise claims.

Informal request numbers 411181831, 407581871, and 409500561 were not grievances. (DSOF ¶¶ 43-46, 81.) So they were not fully exhausted through all levels of the formal grievance process.

Grievance number 408018511 – about law library resources and access – does not relate to Stauch's current claims. (DSOF ¶¶ 43-46, 82-83.) Regardless, after receiving Chavez's response, Stauch did not appeal the grievance to the Secretary. (DSOF ¶ 84.) So this grievance was not fully exhausted through all levels of the formal grievance process.

Grievance number 404578081 complained about PREA-based retaliation by persons other than Defendants. (DSOF ¶¶ 85-86.) It does not relate to Stauch's current claims.

Grievance number 40517231 complained about alleged violations of PREA procedures by persons other than Defendants. (DSOF ¶¶ 87-88.) It does not relate to Stauch's current claims.

Stauch did not file any other grievance appeals to the Secretary between the time of her being transferred to TCF in August 2023 and her filing the Amended Complaint in March 2024. (DSOF ¶ 89.)

**C. Stauch's grievances and letters do not satisfy the exhaustion requirement under the PLRA for her § 1983 claims.**

Stauch never filed a formal grievance regarding any of her remaining claims from Counts I, II, or III, and appealed it through the proper steps to the highest level. Therefore, Stauch failed to properly exhaust administrative remedies for her claims, and the Defendants should be granted summary judgment on those claims.

**III.    Alternatively, Stauch fails to state a plausible claim against Defendants Chavez, Hook, Holthaus, and Zmuda because there is no constitutional right to state administrative grievance procedures.**

A prison's administrative grievance procedure must be followed by an inmate to exhaust administrative remedies under the Prison Litigation Reform Act. *Jones v. Bock*, 549 U.S. 199, 218 (2007). For KDOC inmates, personal-injury claims are a type of administrative grievance that is used to exhaust administrative remedies for claims of personal injury. *Brown v. Schnurr*, No. 22-3183, 2023 WL 5163987, at *1 to *5 (10th Cir. Aug. 11, 2023). But "there is no independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011). Therefore, failing to grant an administrative grievance does not violate the U.S. Constitution. *Id.* Here, Stauch's allegations against Defendants Chavez, Hook, Holthaus, and Zmuda are merely that they did not provide satisfactory relief through the grievance process. (DSOF ¶¶ 4(h), 25; Doc. 12 at 14.) But there is no constitutional right to an administrative grievance procedure. Therefore, summary judgment should be granted in favor of these Defendants.

**IV.    Alternatively, Stauch's interference-with-legal-mail claim fails because no non-frivolous legal cases were adversely affected.**

Stauch's interference-with-legal-mail claim should be dismissed for lack of subject-matter jurisdiction because Stauch fails to plausibly allege an actual injury impairing her right of

access to the courts. An actual injury must be shown to establish the standing necessary to invoke federal jurisdiction under Article III's case-or-controversy requirement in the U.S. Constitution. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Denver Bible Church v. Polis*, No. 20-1391, 2022 WL 200661, at \*10 (10th Cir. Jan. 24, 2022) (citing various Supreme Court and Tenth Circuit cases); *see also* U.S. Const. art. III, § 2, cl. 1. To establish a claim for a violation of access to the courts, an inmate "must show that any denial or delay of access to the court prejudiced him in pursuing litigation." *Trujillo v. Williams*, 465 F.3d 1210, 1226 (10th Cir. 2006). For claims regarding interference with outgoing legal mail, "[a] plaintiff must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim." *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006). "[A] plaintiff need not show that a claim with which a defendant interfered would have prevailed, but only that it was not frivolous." *Simkins v. Bruce*, 406 F.3d 1239, 1244 (10th Cir. 2005).

Rule 56 of the Federal Rules of Civil Procedure allows for "partial summary judgment," not necessarily on whole claims, but on a "part of each claim or defense." Defendants do not argue in this section regarding Stauch's allegations about interference with mail sent to the Shawnee County District Court (DSOF ¶ 4(a)). However, in addition to the arguments in the sections above, the Court should grant partial summary judgment on the other parts of Count I for the reasons below.

### A. Stauch's case in the United States District Court for the District of Colorado was not frustrated, impeded, or hindered by the Defendants.

Stauch alleges that her legal mail from the United States District Court for the District of Colorado was refused by unspecified KDOC staff. (DSOF ¶ 4(c).) And an earlier order in this case seemingly implied that the postal service returned a court order from the District of Colorado as undeliverable after an attempted delivery to Stauch's place of incarceration in

24

Kansas (TCF). (Doc. 29 at 6 (quoting *Stauch v. El Paso Cnty.*, No. 1:22-cv-02467, 2024 WL 3722959, at *2 (D. Colo. Aug. 8, 2024)).) But while the District of Colorado had *ordered* its clerk to mail the order in question to Stauch at TCF, the court records show plainly that the clerk failed to do so and *actually mailed the order to the wrong address*. (DSOF ¶¶ 6-7.) It was not sent to the TCF address until *after* the incorrectly addressed item had been returned as undeliverable. (DSOF ¶ 8.) The docket does not contain any indication that the *correctly* mailed item was ever returned undeliverable. (DSOF ¶ 9.) Therefore, when considering the court record from the District of Colorado,[2] Stauch's allegations regarding the District of Colorado case do not establish any constitutional violation by the Defendants. As no legal mail was refused by KDOC as alleged, KDOC did not frustrate, impede, or hinder the case. Alternatively, Stauch does not specify who refused the relevant mail item, so she has not alleged a violation by these particular defendants.

To be nonfrivolous, the plaintiff's underlying claim must be "described well enough ... to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). Stauch's habeas case

### B. Stauch fails to establish that delays in her receiving legal mail frustrated, impeded, or hindered any cases.

Stauch alleges that her legal mail was often delayed by two weeks or sometimes more. (DSOF ¶ 4(g).) She does not establish that this frustrated, impeded, or hindered any particular case. Additionally, no admissible evidence shows that this delay was caused by the Defendants or any KDOC staff. (DSOF ¶ 4(g).) Therefore, Stauch's generalized and vague allegations regarding delays in receiving legal mail do not establish a constitutional violation by the

---

[2] The Court can take judicial notice of these other court records that have a direct relation to matters at issue. *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010).

Defendants.

**C. Stauch's other allegations of interference with legal mail did not frustrate, impede, or hinder any court cases.**

No admissible evidence establishes that Stauch's other allegations of interference with legal mail involved mail to or from courts or attorneys. (DSOF ¶ 4(b), (d)-(f).) Accordingly, these mail items did not meet the KDOC's definition of "legal mail." (DSOF ¶¶ 14-16.) And no admissible evidence establishes that these alleged instances of interference with mail frustrated, impeded, or hindered any particular court case. Therefore, these allegations of interference with mail do not establish a constitutional violation by the Defendants.

**CONCLUSION**

For these reasons, Defendants request that the Court grant them summary judgment.

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*

Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Lisa D. Montgomery, KS No. 18243
First Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave.
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorneys for Defendants*

26

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March, 2026, the foregoing document was filed with the clerk of the court by using the CM/ECF system, which will send notice of electronic filing to the following:

Natasha Carter
Kansas Department of Corrections
714 SW Jackson, Suite 300
Topeka, KS 66603
Natasha.Carter@ks.gov
*Attorney for Kansas Department of Corrections, Interested Party*

I also certify that a copy of the above will be served on the 23rd day of March, 2026, by means of overnight FedEx, postage prepaid, addressed to:

Letecia Stauch #197179
Colorado Department of Corrections
P.O. Box 392005
Denver, CO 80239
*Plaintiff, pro se*

*/s/ Matthew L. Shoger*
Matthew L. Shoger
Assistant Attorney General

27